UNITED STATES of America, Appellee,

v.

Craig YOUNG–BEY, Appellant.

No. 89–1195.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 17, 1989.

Decided Jan. 4, 1990.

Suzanne Philbrick, Oak Lawn, Ill., for appellant.

Richard Poehling, St. Louis, Mo., for appellee.

Before JOHN R. GIBSON, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and FAGG, Circuit Judge.

FLOYD R. GIBSON, Senior Circuit Judge.

A jury found appellant Craig Young–Bey guilty of possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1) (1982), and use of a firearm during and in relation to a drug trafficking offense in violation of 18 U.S.C. § 924(c) (Supp. V 1987). Young–Bey now appeals, raising a *Batson* claim and arguing that the evidence was insufficient to convict him of the firearms charge. We reject his arguments and affirm his conviction.

## I. BACKGROUND

On August 19, 1988, police officers went to a residence in St. Louis, Missouri, to question Young–Bey, whom they suspected of using and distributing drugs. The residence was Young–Bey's mother's home, where Young–Bey's mother and two brothers lived and where he occasionally spent the night. The police were admitted into the home by Young–Bey's brother. They found Young–Bey lying on a bed in an upstairs bedroom. As the police entered the bedroom they saw a long gun sticking out from under the bed; they looked under the bed and found a rifle and an automatic shotgun, both fully loaded. Detectives also found in the bedroom two strainers, a bullet-proof vest, ammunition cartridges, two dust masks, two boxes of sleeping medication, and five small bags each containing a piece of crack cocaine. Young–Bey was arrested at that time.

After the jury found Young–Bey guilty of both the possession and firearms charges, the district court [1] sentenced him to 63 months for possession and 60 months for using the firearms. He now appeals his conviction.

## II. DISCUSSION

### A. The *Batson* Claim

■ Young–Bey first argues that the government unconstitutionally used two of its peremptory challenges to reduce the number of blacks on the petit jury in violation of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Under *Batson*, a defendant establishes a prima facie case of purposeful discrimination in the selection of a jury by showing that the government's use of its peremptory challenges and any other relevant circumstances raise an inference that the prosecutor excluded venirepersons from the petit jury on account of their race. *Id.* at 96, 106 S.Ct. at 1722. Once a prima facie case has been established, the burden shifts to the government to provide a race-neutral explanation for challenging the black venirepersons. *Id.* at 97, 106 S.Ct. at 1723.

In this case, there were six blacks on the panel of venirepersons assembled for voir dire. The record does not disclose how many venirepersons there were in total, but there appears to have been at least 35. One of the blacks was stricken for cause by the defense. The government requested that another be stricken for cause, but the district court denied that request. The government then used one of its peremptory challenges to strike the black venireperson whom it had attempted to strike for cause. The government also used a second peremptory challenge to remove another of the blacks. The remaining three black persons served on the jury, one as an alternate juror. The record discloses no more information about whether or how the government used its remaining peremptory challenges.

The defense counsel made a timely *Batson* objection. The district court ruled that Young–Bey failed to establish a prima facie case of discrimination under *Batson* and thus did not require the government to state its reasons for striking the two blacks. Young–Bey argues that because the two stricken black venirepersons did not respond to any questions in voir dire there is an absence of any apparent neutral reason for the strikes, thus giving rise to an inference of discrimination sufficient to

---

**1.** The Honorable George F. Gunn, Jr., United States District Judge for the Eastern District of Missouri.

shift the burden of proof under *Batson*. We disagree.

■ To establish a prima facie case under *Batson* the defendant must point to more than the bare fact of the removal of certain venirepersons and the absence of an obvious valid reason for the removal. The Supreme Court in *Batson* clearly provided that the defendant must identify facts and circumstances that support the inference of discrimination, such as a pattern of discriminatory strikes, the prosecutor's statements during voir dire suggesting discriminatory purpose, or the fact that white persons were chosen for the petit jury who seemed to have the same qualities as stricken black venirepersons. *See Batson*, 476 U.S. at 96–97, 106 S.Ct. at 1722–23.

■ In this case, when Young–Bey made his *Batson* objection he relied solely upon the fact that two blacks had been peremptorily challenged. He did not identify any other facts or circumstances to support his claim that an inference of discrimination had been raised, except for the fact that the two stricken blacks had not responded to any of the questions geared to detect biased venirepersons. This court is now faced with a record that does not indicate how the stricken black persons compared to whites who were not stricken or how many peremptory challenges in total were used by the government and against whom. Essentially, all that is clear from the record is that two blacks who did not respond during voir dire were peremptorily challenged. We cannot conclude that those facts alone establish a prima facie case under *Batson*. *See United States v. Montgomery*, 819 F.2d 847, 850–51 (8th Cir.1987) (government's use of peremptory challenges to strike two of four black venirepersons fell short of raising inference of discrimination); *United States v. Porter*, 831 F.2d 760, 767–68 (8th Cir.1987) (defendant's "bare reliance" on government's use of a peremptory challenge to strike one of two blacks insufficient to raise inference of discrimination), *cert. denied*, 484 U.S. 1069, 108 S.Ct. 1037, 98 L.Ed.2d 1001 (1988); *United States v. Sangineto–Miranda*, 859 F.2d 1501, 1520 (6th Cir.1988) (stating that "[t]he defendant has the burden of producing a record in support of a prima facie case of purposeful discrimination" under *Batson*).

Young–Bey places great emphasis on our statement in *United States v. Battle*, 836 F.2d 1084, 1086 (8th Cir.1987), that "the striking of a single black juror for racial reasons violates the equal protection clause, even though other black jurors are seated, and even when there are valid reasons for the striking of some black jurors." (citations omitted). That is an accurate statement, but nothing in it suggests, as Young–Bey does, that a defendant may establish a *Batson* claim simply by showing that a black juror was struck. *See United States v. Ingram*, 839 F.2d 1327, 1330 n. 3 (8th Cir.1988) (stating that *Battle* did not suggest that the striking of a black juror in and of itself establishes a prima facie case under *Batson*). *Batson* quite clearly requires the defendant to present facts to the district court which raise an inference that the blacks were struck *because of their race*. *Batson*, 476 U.S. at 93, 96, 106 S.Ct. at 1721, 1723. Our review of the record reveals that no such facts were presented to the district court.

■ And, the numbers alone in this case (two of six blacks peremptorily stricken) do not strongly suggest discrimination, as was the case in *Battle* where the government used five of six challenges to strike five of seven potential black jurors. Further, we consider the presence of two blacks on the petit jury to undermine Young–Bey's claim. Of course, the fact that blacks are ultimately seated on the jury does not necessarily bar a finding of discrimination under *Batson*, *see Battle*, 836 F.2d at 1086, but the fact may be taken into account in a review of all the circumstances as one that suggests that the government did not seek to rid the jury of persons who shared the defendant's race. *See Montgomery*, 819 F.2d at 851; *United States v. Grandison*, 885 F.2d 143, 147 (4th Cir.1989). Finally, we are mindful that the district judge plays a "pivotal role" in determining whether a prima facie case has been made under *Bat-*

*son* because he or she observes the voir dire procedure firsthand and is in a far better position than we to assess the prosecutor's decisions. *Grandison*, 885 F.2d at 146 (quoting *United States v. Clemons*, 843 F.2d 741, 746 (3d Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 97, 102 L.Ed.2d 73 (1988)). *See also Batson*, 476 U.S. at 99 n. 22, 106 S.Ct. at 1724 n. 22 (noting confidence that district judges can identify purposeful discrimination in jury selection). We give the district court's finding that no prima facie case was made considerable deference.

Accordingly, we affirm the district court's ruling that Young–Bey failed to establish a prima facie case of discrimination under *Batson* and that the government was thus not required to state its reasons for peremptorily challenging the two black venirepersons.

### B. The Sufficiency Claim

Young–Bey also argues that the evidence at trial was insufficient to support the finding that the firearms found in the bedroom where he was arrested were used during and in relation to a drug trafficking crime within the meaning of 18 U.S.C. § 924(c).[2] Our standard of review in this regard is well established. We must examine the evidence in the light most favorable to the government, giving it the benefit of all reasonable inferences, and can reverse only if we conclude that no reasonable jury could have found guilt beyond a reasonable doubt. *United States v. Krasaway*, 881 F.2d 550, 554 (8th Cir.1989).

■ Applying that standard, we conclude that the evidence was sufficient to support the finding that Young–Bey used the firearms in relation to drug trafficking. To support a conviction under section 924(c) the government need not show that the defendant was in actual physical possession of the firearm. *See United States v. Matra*, 841 F.2d 837, 841–42 (8th Cir.1988). It is sufficient to show that the defendant

kept the firearms readily accessible to protect and facilitate the drug enterprise. It has become common knowledge that drug traffickers typically keep firearms available to protect themselves and their drugs and drug money. The presence and availability of the firearms are often crucial to the "success" of the drug enterprise. It is therefore permissible for juries to infer that firearms found among a drug trafficker's paraphernalia are used to further the drug venture and are thus used during and in relation to drug trafficking within the meaning of section 924(c). *See id.* at 842–43; *United States v. Brett*, 872 F.2d 1365, 1370–71 (8th Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 322, 107 L.Ed.2d 312 (1989); *United States v. LaGuardia*, 774 F.2d 317, 321 (8th Cir.1985).

■ In this case, Young–Bey was arrested in a bedroom containing drug paraphernalia, including strainers, dust masks, sleeping pills, and bags of crack cocaine. Police also found in the bedroom a loaded rifle, a loaded automatic shotgun, and a flak jacket, and there was evidence that all of these items belonged to Young–Bey. Moreover, the jury heard testimony that Young–Bey was a heavy user and dealer of drugs. While there was testimony that the guns belonged to Young–Bey's family for protection in their high-crime neighborhood, Young–Bey's mother, who owned the house where the guns were found, testified that she had no knowledge that the guns were there. The jury was entitled to infer from this evidence and the "well recognized nexus between drugs and firearms," *United States v. Golter*, 880 F.2d 91, 94 (8th Cir.1989) (citations omitted), that Young–Bey used the firearms during and in relation to drug trafficking for purposes of section 924(c).

### III. CONCLUSION

In sum, we hold that the district court did not err in ruling that Young–Bey failed to establish a prima facie case of purpose-

---

**2.** Section 924(c) provides: "Whoever, during and in relation to any crime of violence or drug trafficking crime ... uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime, be sentenced to imprisonment for five years...." 18 U.S.C. § 924(c) (Supp. V 1987).

ful discrimination under *Batson* and further that the evidence was sufficient to convict him of the firearms charge. His conviction is affirmed.