UNITED STATES of America, Appellee,

v.

Kevin TOWNLEY, Appellant.

No. 90–1364.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 12, 1990.

Decided March 27, 1991.

Irene Smith, St. Louis, Mo., for appellant.

Michael Reap, St. Louis, Mo., for appellee.

Before LAY, Chief Judge, BRIGHT, Senior Circuit Judge, and VAN SICKLE,* Senior District Judge.

BRIGHT, Senior Circuit Judge.

Kevin Townley appeals his conviction and sentence for possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C) (1988). Townley also appeals his conviction for use of a firearm in relation to drug trafficking in violation of 18 U.S.C. § 924(c)(1) (1988). Specifically, Townley contests: (1) the validity of the search warrant for his apartment, (2) the sufficiency of the Government's proof on the firearm count, and (3) the inclusion of certain drug amounts to calculate his sentencing range under section 1B1.3 of the United States Sentencing Commission, *Guidelines Manual* (Nov. 1989) (amended 1990) (hereinafter U.S.S.G.). We affirm Townley's convictions, but reverse and remand for resentencing.

## I. BACKGROUND

On June 9, 1989, police arrested Townley, a twenty-six-year-old insurance salesman, following a search of his studio apartment. Police acted pursuant to a warrant which authorized the seizure of drugs, guns, money and records from Townley's apartment. The police simultaneously searched an apartment down the hallway occupied by one Demetrius Blunt.

The police obtained search warrants for both apartments based on information provided by a confidential informant. The Affidavit In Support of a Search Warrant (hereinafter Affidavit) reported that the confidential informant had seen "two large aluminum containers" filled with cocaine

---

* The HONORABLE BRUCE M. VAN SICKLE, Senior United States District Judge for the District of North Dakota, sitting by designation.

powder in Blunt's apartment and "several large bundles of U.S. currency" in Townley's apartment earlier that day. According to the Affidavit, the informant advised police that Blunt's apartment was "being used as a safe house to store drugs" for Townley's half-brother, Frederick Townley, a reported drug kingpin. The informant also reportedly asserted that "Kevin Townley uses his apartment to store large sums of money which are proceeds from his brothers [sic] illicit drug sales."

The search of Townley's apartment produced no cash. However, the police did discover a baggie containing 26.92 grams of 82% pure cocaine in a kitchen cabinet and a loaded revolver in a bedside dresser. In a closet, the police also found a few grams of marijuana in a coat pocket and a metal lock box containing cocaine residue.

In Blunt's apartment, the police found a similar lock box underneath the bed. This box contained a 1,456.87 gram brick of 100% pure cocaine, fifteen baggies of cocaine, totalling 400.18 grams and ranging in purity from 70% to 93%, and $1,100 in cash. In addition, the search produced correspondence pertaining to a joint business venture between Townley and Blunt called Jaguar Productions.

The Government charged Townley in a two-count indictment with possession with intent to distribute 26.92 grams of cocaine and use of a firearm in drug trafficking. To prove intent to distribute, the Government presented expert testimony that the quantity and purity of the cocaine in Townley's apartment suggested that Townley possessed it for resale rather than personal use.[1] The Government further argued that Townley retained the firearm to protect his drug stash. The jury returned guilty verdicts on both counts.

At sentencing, the Government switched course and proceeded under a conspiracy theory. The Government's theory essentially posited the existence of a joint agreement between Townley, his half-brother and Blunt to engage in cocaine distribution. Under this theory, the Government sought to hold Townley accountable not only for the 27 grams proven at trial, but also for the 1,857 grams of cocaine discovered in Blunt's apartment.

Additionally, the Government sought to include nearly four kilograms of cocaine seized at the St. Louis bus station during a drug bust on Easter Sunday, some three months prior to Townley's arrest for the instant offense. In that incident, the police arrested four incoming passengers from Los Angeles after finding 3,916 grams of cocaine among their personal effects. A purse from one of the passengers contained a group photograph of Townley, his half-brother Frederick, Demetrius Blunt and an unidentified individual.

According to police, Townley approached the officers during the arrest and indicated that he had come to pick up the passengers. Townley was carrying a pager and wearing a South African medallion similar to that worn by two of the passengers. When the police questioned Townley about his connection to Frederick Townley, Townley initially denied any relationship, but later admitted to being brothers. Upon police request, Townley agreed to take the passengers' luggage home with him from the jail.

The Government neither arrested nor charged Townley for the bus station incident. At sentencing, however, the Government, through a police detective, introduced the following hearsay statements of bus passenger Dominica Ashford:

Q. What did Dominica Ashford say as to the source of the cocaine that was seized from both herself and [her co-passengers]?

A. She advised me in a written statement that the cocaine was intended to be brought to a subject by the name of Freddy Townley or Forego, what he was known on the street.

She further went on to tell us that Kevin Townley was in fact there or supposedly there at the bus station to pick them up.

---

1. The expert testified that the baggie of cocaine contained nearly 270 dosage units (1/10 gram per dose) and could be diluted with a cutting agent to produce even more doses.

Tr. at 234. Through the detective, the Government further reiterated the hearsay statements of its confidential informant that Townley and Blunt used their apartments as safe houses for the drug operation of Townley's half-brother.[2]

Townley hotly contested the cocaine quantities outside the count of conviction. He argued that sentencing should be limited to the 27 gram amount, which would have produced a base offense level of 14 and a sentencing range of fifteen to twenty-one months.

The district court nevertheless decided that "there was sufficient evidence to connect the defendant to the Easter Sunday action and also to the Blunt search." Tr. at 253. This finding placed Townley at an offense level of 32 on the drug count and dictated a sentencing range of 121 to 151 months. Additionally, the firearm count carried a mandatory consecutive sentence of sixty months. Thus, the district court sentenced Townley, a first-time offender, to the minimum possible term of imprisonment under the Guidelines—fifteen years and one month without the possibility of parole. This appeal followed.

## II. DISCUSSION

### A. Validity of Search Warrant

Townley objects to the admission into evidence of the drugs and firearm seized from his apartment. Townley asserts that the judge lacked probable cause to issue a search warrant for his apartment.

There exists a substantial question as to the search warrant's validity.[3] Nevertheless, even if the warrant lacked validity, the fruits of the search still could come into evidence under the good faith exception to the exclusionary rule. In *United States v. Leon*, 468 U.S. 897, 922, 104 S.Ct. 3405, 3420, 82 L.Ed.2d 677 (1984), the Supreme Court determined that "the marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion." *See also United States v. White*, 890 F.2d 1413, 1419 (8th Cir.1989), *cert. denied,* — U.S. —, 111 S.Ct. 77, 112 L.Ed.2d 50 (1990).

In this case, Townley has neither alleged nor argued that the police reliance on the warrant's apparent authority lacked objective reasonableness. Our review of the record likewise discloses no suggestion of unreasonable reliance or bad faith on the part of the officers. Accordingly, the fruits of the search properly entered into the evidence at trial.

### B. Sufficiency of the Evidence

■  Townley next challenges his conviction for the firearm count, *see* 18 U.S.C. § 924(c)(1). According to Townley, the Government failed to prove that he used the loaded revolver to further a drug trafficking offense. We nevertheless believe that the weapon's proximity to the drugs and its accessibility suffice to establish this element. *See, e.g., United States v. Young–Bey*, 893 F.2d 178, 181 (8th Cir. 1990); *United States v. Lyman*, 892 F.2d 751, 753 (8th Cir.1989), *cert. denied,* — U.S. —, 111 S.Ct. 45, 112 L.Ed.2d 21 (1990). As we noted in *Young–Bey:*

> It has become common knowledge that drug traffickers typically keep firearms available to protect themselves and their drugs and drug money. The presence

**2.** Although Townley objected at sentencing to the Government's hearsay evidence, his appeal does not pursue this point.

**3.** The Affidavit recited only one fact to support its assertion that Townley stored drug proceeds for his half-brother: that the informant observed several bundles of currency in Townley's apartment. The remaining facts pertained solely to the drug activities of Demetrius Blunt and Townley's half-brother. The Affidavit also failed to specify any connection between Townley and Blunt *per se* and nowhere asserted the existence of a drug conspiracy between Townley, his half-brother and Blunt. Given a close reading, the Affidavit does not even assert that Townley knew the alleged cash in his apartment derived from drug sales.

Additionally, Townley's possession of a large quantity of bundled cash contravened no law. Moreover, the informant's failure to specify the currency denominations made it impossible to determine whether the cash exceeded that which normally could be earned through lawful means.

and availability of the firearms are often crucial to the "success" of the drug enterprise. It is therefore permissible for juries to infer that firearms found among a drug trafficker's paraphernalia are used to further the drug venture and are thus used during and in relation to drug trafficking within the meaning of section 924(c).

893 F.2d at 181.

Here, Townley proffers no contention that the evidence failed to support his underlying drug conviction. Accordingly, we affirm Townley's conviction for the firearm count.

## C. Sentencing: Relevant Conduct

Lastly, Townley objects to the inclusion of additional, uncharged drug amounts in computing his sentence under the Guidelines' relevant conduct provisions, *see* U.S.S.G. § 1B1.3. Townley argues that the sentence violated his due process right to make the Government prove these offenses beyond a reasonable doubt. Our previous precedents have consistently rejected such claims. *See, e.g., United States v. Sleet,* 893 F.2d 947, 949 (8th Cir.1990); *United States v. Gooden,* 892 F.2d 725, 727–28 (8th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 2594, 110 L.Ed.2d 274 (1990). Relying on *McMillan v. Pennsylvania,* 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986) (Rehnquist, J.), we concluded that a preponderance of the evidence suffices for determinations at sentencing. *Gooden,* 892 F.2d at 727–28.

We nonetheless observe the unusual nature of the sentencing determination in this case. Here, the Government charged and proved only a single drug infraction involving 27 grams of cocaine. Yet, the Government urged the court to sentence Townley for his alleged participation in a multi-person cocaine conspiracy entailing nearly 6,000 grams. These 6,000 grams produced an 18-level increase in Townley's base offense level and a seven-fold increase in the permissible sentencing range. Under such circumstances, due process conceivably could require more than a mere preponderance. At the very least, *McMillan* allows for the possibility that the preponderance standard the Court approved for garden variety sentencing determinations may fail to comport with due process where, as here, a sentence enhancement factor becomes "a tail which wags the dog of the substantive offense." 477 U.S. at 88, 106 S.Ct. at 2417.[4]

The Third Circuit recently deemed the preponderance standard of *McMillan* inadequate under seemingly analogous circumstances. *United States v. Kikumura,* 918 F.2d 1084, 1101 (3d Cir.1990). In *Kikumura,* the Guidelines dictated a range of twenty-seven to thirty-three months imprisonment (level 18) for passport offenses and possession of explosives. However, upon finding that the defendant acquired the explosives as an international terrorist and planned to kill large numbers of people, the district court departed upward and imposed a sentence of thirty years (equivalent to level 40). The Third Circuit concluded:

---

**4.** In *McMillan v. Pennsylvania,* the Supreme Court addressed whether a state statute may impose a mandatory five-year term of imprisonment for certain offenses if the sentencing court finds by a preponderance of the evidence that the offender " 'visibly possessed a firearm.' " 477 U.S. 79, 81, 106 S.Ct. 2411, 2413, 91 L.Ed.2d 67 (1986) (citation omitted). In holding that the statute satisfied due process, the Court noted that the sentencing procedure presented a comparatively slight risk of error because "visible possession is a simple, straightforward issue susceptible of objective proof." *Id.* at 84, 106 S.Ct. at 2415. This factor may well serve to distinguish *McMillan* from the instant action.

The Guidelines' relevant conduct provisions potentially require the sentencing court to interpret numerous interrelated guideline sections and statutory provisions. *See, e.g.,* U.S.S.G. §§ 1B1.2(b) & comment. (nn. 2–3 & 5), 1B1.-3(a)(1)–(4) & comment. (nn. 1–2 & backg'd.), 1B1.4, comment. (backg'd.), 2D1.4, comment. (n. 1), 3D1.2(d) & comment. (n. 6 & backg'd.); 18 U.S.C. §§ 3553(a)-(b), 3661 (1988). It may also require the court to sort through a myriad of factual considerations and to divine the potentially elusive parameters of a defendant's culpability. This determination, which encompasses such factors as subjective intent, reasonable foreseeability and scope of jointly-agreed-to misconduct, *see* U.S.S.G. § 1B1.3, comment. (n. 1), hardly conforms to simple proof. Moreover, in contrast to *McMillan,* the relevant conduct analysis frequently takes place without the benefit of a jury trial on the core conduct in question.

This is perhaps the most dramatic example imaginable of a sentencing hearing that functions as "a tail which wags the dog of the substantive offense." *McMillan*, 477 U.S. at 88, 106 S.Ct. at 2417. In this extreme context, we believe, a court cannot reflexively apply the truncated procedures that are perfectly adequate for all of the more mundane, familiar sentencing determinations.

*Id.* at 1100–01. The court went on to hold that, under these circumstances, due process requires clear and convincing evidentiary support for the facts relied upon to enhance the sentence. *Id.* at 1102.

We do not foreclose the possibility that in an exceptional case, such as this one, the clear and convincing standard adopted by our sister circuit might apply. Nevertheless, we do not adopt the clear and convincing standard here. Rather, we leave that question for another day, because in our view, the Government's evidence cannot withstand scrutiny even under the preponderance standard applicable to the usual case. *See United States v. Malbrough*, 922 F.2d 458, 464 (8th Cir.1990).

The Government urges us to uphold the district court's determination with respect to (1) the 1,857 grams of cocaine from Blunt's apartment, and (2) the four kilograms of cocaine from the bus station incident. However, for the reasons discussed below, we possess a definite and firm conviction that consideration of these quantities constituted error. Accordingly, we reverse. *See United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948).

1. Blunt's Apartment

█ The Government argues that the cocaine from Blunt's apartment constitutes relevant conduct under U.S.S.G. § 1B1.3(a)(2). Under that section, which applies to drug distribution offenses, relevant conduct encompasses "all such acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(2) & comment. (backg'd.). From the Government's viewpoint, the Blunt cocaine comprised part of a common

scheme or plan, because: (1) the confidential informant asserted that both Blunt's and Townley's apartments housed drugs or drug proceeds, (2) both apartments actually contained cocaine and Blunt's apartment contained cash, (3) both apartments housed identical lock boxes containing either cocaine or cocaine traces, and (4) Townley and Blunt corresponded about Jaguar Productions. We remain unconvinced.

█ At a minimum, the Government must prove the factual prerequisites to a sentence enhancement by a preponderance of the evidence. *See United States v. Malbrough*, 922 F.2d 458, 464 (8th Cir. 1990); *United States v. Streeter*, 907 F.2d 781, 792 (8th Cir.1990). In this case, the Government must show that Townley possessed a personal interest in or responsibility for the Blunt cocaine. Under the Guidelines, this requirement could be satisfied by proof that Townley aided, abetted, counseled, commanded, induced, procured or willfully caused the presence or processing of the cocaine in Blunt's apartment. *See* U.S.S.G. § 1B1.3, comment. (nn. 1–2). Alternatively, the Government could show that the Blunt cocaine fell within the scope of criminal activity jointly undertaken by Townley and reasonably foreseeable to him. *Id.*

The Government does not contend that its evidence satisfies the first alternative. As to the second alternative, we note that the Government elected not to charge this case as a conspiracy. Although not dispositive, we pause to question whether the Government itself believed that it possessed probable cause to charge joint criminal activity, much less a preponderance of proof. *Cf. United States v. Byrd*, 898 F.2d 450, 453 (5th Cir.1990) ("An indictment is a conclusive finding that there is probable cause to believe that the allegations in the indictment took place").

We further observe that the Government, in attempting to associate Townley with the Blunt cocaine, relies heavily on the hearsay allegations of a still-undisclosed informant. Our prior cases indicate our concern about the reliability of hearsay statements in the sentencing context. *See, e.g., United States v. Cammisano*, 917 F.2d 1057, 1062 (8th Cir.1990); *United*

*States v. Fortier*, 911 F.2d 100, 103–04 (8th Cir.1990). Such misgivings are especially fitting here.

We have previously noted the inconclusive nature of the informant's statements in this case. *See supra* note 3. Additionally, the fact that the police investigation failed to corroborate critical aspects of the informant's story amplifies our concerns. Most significantly, the police search of Townley's apartment failed to produce the alleged drug proceeds. These drug proceeds formed the sole objective means of verifying the informant's accusations with respect to Townley. They also formed the only direct link between Townley and the purported drug dealings between Blunt and Townley's half-brother. Moreover, the Government never called the informant, or any other knowledgeable person, to explain the absence of the proceeds or to delineate the connections now alleged between these three individuals. *Cf. United States v. Winfrey*, 900 F.2d 1225, 1228 (8th Cir.1990) (co-conspirator testifies at trial about defendant's participation); *United States v. Mann*, 877 F.2d 688, 690 (8th Cir.1989) (DEA agent observes working relationship between defendant and cocaine supplier).

The remainder of the Government's evidence renders us no more certain. The Government produced no chemical evidence to establish that the cocaine found in Townley's and Blunt's apartments came from the same source.[5] Moreover, the lock box from Townley's apartment creates negligible grounds for suspicion—particularly in the absence of testimony from the informant identifying the lock box as one of the "aluminum containers" earlier observed in Blunt's apartment. Lastly, we point out that the Government failed to present one iota of evidence connecting Jaguar Productions to drug activity. *Cf. United States v. Koonce*, 884 F.2d 349, 352 (8th Cir.1989) (defendant's correspondence contained explicit reference to continuing criminal enterprise). The Government nowhere contradicted Townley's testimony that Jaguar Productions constituted a legitimate business enterprise and sought no details about its records or operations.

Under the circumstances, we conclude that the Government failed to prove that Townley joined his half-brother and Blunt in a cocaine distribution scheme. We therefore hold that the district court erred in sentencing Townley for the cocaine from Blunt's apartment. *See United States v. North*, 900 F.2d 131, 133 (8th Cir.1990).

### 2. Bus Station Incident

■ The Government likewise urges us to include the four kilograms of cocaine from the bus station incident. According to the Government, the fact that Townley arrived at the bus station, wearing a pager and a medallion, to pick up passengers bearing similar medallions, a picture of Townley and cocaine destined for Townley's half-brother renders the cocaine from this incident attributable to Townley.

In our view, however, the Government's evidence lacks one crucial element: knowledge. Nowhere does the Government establish that Townley knowingly assisted his half-brother's purported drug operation. Although Townley could have been a culpable participant, he also could have embarked on an innocent favor. *Cf. United States v. Lawrence*, 918 F.2d 68, 70–71 (8th Cir.1990) (defendant accompanied co-conspirator on a drug buy and knowingly carried a pouch of cocaine). None of the Government's evidence, including the medallions, the group picture and the hearsay statements of Dominica Ashford, prove inconsistent with a favor analysis. Furthermore, the Government has yet to present evidence that Townley carried the pager other than in connection with his legitimate insurance saleswork.

The Government makes much of the fact that Townley, during the heat of a drug interrogation, attempted to disassociate himself from his half-brother. While this factor may suggest that Townley ultimately came to know the purpose of his errand, it reveals little about Townley's intent at the time he set out for the bus station.

---

**5.** Even if Townley obtained his cocaine from Blunt, this factor would not necessarily establish a joint undertaking. In *United States v. North*, 900 F.2d 131, 134 (8th Cir.1990), we observed that a mere buyer-seller relationship "is not enough ... to assess all quantities distributed by the supplier to each person who purchased drugs from that supplier."

The implicit assertion in the Government's case is that Townley *must* have known about drugs allegedly destined for his half-brother. Yet, the Government presented no proof that Townley even maintained regular contact with his half-brother, much less knew the workings of his half-brother's alleged illicit activities. *Cf. United States v. Frondle,* 918 F.2d 62, 65 (8th Cir.1990) (defendant admits knowledge of alleged co-conspirator's operation). We cannot tolerate this kind of guilt by association. Stripped of its improper inferences, the Government's allegations against Townley stand as bare conjecture. Accordingly, we hold that the district court erred in sentencing Townley for the cocaine from the bus station incident. *See United States v. Rivera,* 898 F.2d 442, 445–46 (5th Cir.1990).

## III. CONCLUSION

We affirm Townley's convictions for possession with intent to distribute cocaine and use of a weapon in relation to drug trafficking. However, we reverse and remand for resentencing on the drug count limited to the 27 gram figure supported by the evidence.