**UNITED STATES of America, Appellee,**

v.

**John E. JOHNSON, also known as James A. Good, Appellant.**

**No. 93–1532.**

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 15, 1993.

Decided Jan. 3, 1994.

John R. Cullom, Kansas City, MO, argued, for appellant.

E. Eugene Harrison, Kansas City, MO, argued, for appellee.

Before FAGG, Circuit Judge, HEANEY, Senior Circuit Judge, and BOWMAN, Circuit Judge.

BOWMAN, Circuit Judge.

### I.

State authorities in September 1990, acting upon evidence developed by Mark Warren of the Jackson County (Missouri) Drug Task Force, executed a search warrant at a residence located on Jackson Avenue in Grandview, Missouri. The house contained firearms and large quantities of drugs, drug-related materials, and cash. John E. Johnson was found flushing crack cocaine and methamphetamine down a toilet. Based on the evidence found in the house, Johnson was charged in state court with drug trafficking. He failed to appear to answer the charges, and the state issued a warrant for his arrest.

More than one year later, Warren made several undercover narcotics purchases from Charles Dorrell. Based on evidence developed through these operations, state law enforcement authorities in April 1992 located Johnson in a residence on Northeast Afton Road in Kansas City, Missouri. Johnson again was arrested, this time as he washed cocaine down the kitchen drain. As before, the house in which he was arrested contained a firearm and large quantities of drugs, drug-related materials, and cash.

Johnson subsequently was indicted by a federal grand jury and then tried in federal court pursuant to a seven-count superseding information that charged various federal narcotics and firearms violations. The jury convicted Johnson on all six counts in which he was named, and he was sentenced to 424 months of imprisonment. On appeal, Johnson argues that (1) the District Court[1] improperly applied a statutory provision that enhanced his weapons sentences, (2) the government's evidence was insufficient on various counts, (3) the District Court improperly denied his motions for a new trial and a hearing based on newly discovered evidence, (4) all of the government's evidence should have been suppressed, and (5) the District Court prejudiced his case by making improper remarks to the jury. We conclude that none of Johnson's arguments has merit, and we affirm his convictions and sentence.

### II.

### A.

We begin with Johnson's attack upon his enhanced sentences on the firearms charges. Counts IV and VII of the information each charged Johnson with use of a firearm in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1) (Supp. IV 1992), which mandates a five-year term of imprisonment for the first violation and a twenty-year term of imprisonment "[i]n the case of [a] second or subsequent conviction under this subsection." Section 924(c)(1) further provides that "the term of imprisonment imposed under this subsection [shall not] run concurrently with any other term of imprisonment." *Id.*

In accordance with § 924(c)(1) and *United States v. Foote,* 898 F.2d 659, 668 (8th Cir.), *cert. denied,* 498 U.S. 838, 938, 111 S.Ct. 112, 112 L.Ed.2d 81 (1990), the District Court sentenced Johnson to a five-year term of imprisonment for Count IV, which related to a .44–magnum revolver found at the Afton Road residence, and a twenty-year term of imprisonment for Count VII, which related to a .38–caliber Derringer and a .357–magnum revolver found at the Jackson Avenue address, the sentences to run consecutively to each other and to Johnson's other sentences.

In briefing this appeal, Johnson argued that the sentence enhancement for a "second or subsequent conviction" applies only when the conduct underlying the second conviction

---

1. The Honorable Fernando J. Gaitan, Jr., United States District Judge for the Western District of Missouri.

took place after the judgment of conviction for the first, and he urged us to reconsider *Foote* and hold that the second, enhanced firearms sentence cannot apply to a defendant if both firearms convictions resulted from different counts of the same indictment and the defendant had no previous § 924(c) violations. He conceded during oral argument, however, that the case on which he relied to support this argument, *United States v. Abreu,* 962 F.2d 1447, 1453 (10th Cir.1992) (en banc), *cert. granted, judgment vacated, and case remanded,* —— U.S. ——, 113 S.Ct. 2405, 124 L.Ed.2d 630 (1993), is no longer valid law in light of *Deal v. United States,* 508 U.S. ——, ——, 113 S.Ct. 1993, 1996, 124 L.Ed.2d 44 (1993). Because the Supreme Court in *Deal* addressed the precise issue Johnson raises here, and reached the same conclusion regarding the correct interpretation of § 924(c)(1) as did this Circuit in *Foote,* Johnson's first argument is foreclosed.

### B.

■ Arguing that the evidence is insufficient to permit a jury to find him guilty on various counts, Johnson claims that the District Court erred by denying his motions for a judgment of acquittal. We view the evidence in the light most favorable to the government, drawing from the facts all reasonable inferences that support the government's position. *United States v. Horne,* 4 F.3d 579, 587 (8th Cir.1993). The government's evidence need not be inconsistent with every reasonable hypothesis of innocence, *United States v. Newton,* 756 F.2d 53, 54 (8th Cir.1985), and if it rationally supports the jury verdict, we cannot disturb the conviction, *United States v. Nelson,* 984 F.2d 894, 899 (8th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 2945, 124 L.Ed.2d 693 (1993). Instead, we will reverse only if no reasonable jury could have concluded beyond a reasonable doubt that Johnson was guilty of the charged offense. *See United States v. Young–Bey,* 893 F.2d 178, 181 (8th Cir.1990).

### 1.

■ Johnson argues that the government's evidence was insufficient to allow the

jury to find that he conspired to possess with intent to distribute and to distribute cocaine and methamphetamine, as charged in Count I. To demonstrate a conspiracy, the government must show an agreement among two or more persons to commit an illegal act. *United States v. Schmidt,* 922 F.2d 1365, 1369 (8th Cir.1991). The government need only show that those involved operated pursuant to a common scheme or had a tacit understanding, rather than a formal agreement. *United States v. Hoelscher,* 914 F.2d 1527, 1534 (8th Cir.1990), *cert. denied,* 498 U.S. 1090, 111 S.Ct. 971, 112 L.Ed.2d 1057 *and* —— U.S. ——, 111 S.Ct. 2240, 114 L.Ed.2d 482 (1991). Because the details of a conspiracy often are shrouded in secrecy, circumstantial evidence and inferences from the parties' actions may be used to establish the conspiracy's existence. *United States v. Sparks,* 949 F.2d 1023, 1027 (8th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1987, 118 L.Ed.2d 584 (1992). Finally, evidence of the parties' association, although not in itself enough to establish a conspiracy, is a relevant factor. *United States v. Ivey,* 915 F.2d 380, 384 (8th Cir.1990).

Based on our review of the record, we are satisfied the evidence is sufficient to sustain Johnson's conviction on the conspiracy count. The jury reasonably could have concluded that Johnson lived in and was engaged in drug trafficking from both the Jackson Avenue and Afton Road residences, and that Johnson conspired with Dorrell and Christina Ealey to possess with intent to distribute and to distribute cocaine and methamphetamine.

At the Jackson Avenue residence, the authorities found Johnson, who was flushing drugs down the toilet, and Ealey, a fifteen-year-old female. No other persons were found in the house. The evidence found there makes it unlikely that Johnson and Ealey merely were housesitting: the house contained crack cocaine, methamphetamine, drug processing and packaging materials, an assortment of drug notes, electronic and triple-beam balance scales, video surveillance equipment that displayed a live image of the area in front of the residence, and a scanner programmed to receive frequencies used by

law enforcement agencies. The authorities also found in the house firearms, bullets, over $15,000 in currency, and a piece of mail that was addressed to Johnson at the Jackson Avenue address.

Furthermore, the circumstances in which Johnson was found show his control of the premises: he was talking on the telephone in the kitchen (where the various tools of his trade were found); he could observe on his video surveillance monitor that a police vehicle had pulled up in front of his house; and he dropped the phone, grabbed an armload of drugs, ran into the bathroom, and started flushing the drugs down the toilet.

As to the residence on Afton Road, first, there was evidence that Ealey was living there. In February 1992, Ealey was observed returning to the residence after selling narcotics to Dorrell (who in turn delivered them to Warren), and upon her return she checked the mail before entering. Some of the currency given to Ealey by Dorrell (which he had received from Warren) at this purchase was among that found in April at the residence, as was currency from most of Warren's other purchases from Dorrell. Evidence that Ealey lived at the Afton Road residence was probative of Johnson's also residing there because the government's evidence demonstrated a clear link between Johnson and Ealey: Johnson and Ealey, and only those two persons, were found at the Jackson Avenue residence; both used the same Blue Springs, Missouri, address on their identification and other papers; and Johnson and Ealey (and a baby), and no one else, were found at the Afton Road address.

Other evidence also supports the conclusion that Johnson was living in the Afton Road residence. The circumstances at the two houses were quite similar: at the Afton Road house the authorities found large quantities of methamphetamine and cocaine, drug processing and packaging materials, electronic and triple-beam balance scales, a scanner set to frequencies used by law enforcement agencies, a firearm, bullets, almost $260,000 in currency, and Johnson washing cocaine down the drain. As with the Jackson Avenue residence, the evidence discovered at the Afton Road house shows that Johnson

was not merely visiting. Moreover, there was testimony that Johnson and Ealey, and no one else, lived in the house; this testimony was buttressed by the finding at the premises of Ealey's personal papers and Johnson's fake identification papers, which used the name "James Allen Good."

That the Afton Road house was not rented in Johnson's or Ealey's name is not revealing of much, given Johnson's status during the relevant period as a fugitive from justice and his practice of using others' names to hide his whereabouts. Patrick Keenan, who along with Elizabeth Smith arranged for the rental of the Afton Road residence, was observed stopping, but not staying, at the residence. There is no shortage of evidence from which the jury reasonably could conclude that Johnson lived at each of the two residences in which he was arrested.

The evidence the government introduced at trial showed that Dorrell purchased narcotics over a period of months from Johnson's residence and in turn sold them on the streets. The jury reasonably could have concluded that Johnson conspired with Dorrell and Ealey to possess and distribute cocaine and methamphetamine.

2.

■ Johnson also argues that the government did not present evidence sufficient to show that, as charged in Counts IV and VII, he used firearms in connection with a drug trafficking offense in violation of § 924(c)(1). Section 924(c)(1) prescribes prison terms for "[w]hoever, during and in relation to any ... drug trafficking crime ..., uses or carries a firearm." Johnson argues that the government did not show that he "used" a weapon, because there was no evidence he ever actually displayed, brandished, or discharged a firearm, and that there also was no evidence that he "carried" a firearm. Johnson contends that the government failed to introduce evidence that he ever was seen in either residence before his arrests, possessed or was seen with any of the firearms, knew any of the firearms was present, or was using them in furtherance of a drug trafficking crime.

■ To obtain a § 924(c) conviction, the government need not show a defendant's actual physical possession of the firearm, *see United States v. Keeper,* 977 F.2d 1238, 1241 (8th Cir.1992) (per curiam), or that he brandished, displayed, or discharged it, *see United States v. Matra,* 841 F.2d 837, 843 (8th Cir. 1988). The government is not required to prove that the house in which the gun is found is the defendant's full-time residence, *see United States v. Bennett,* 956 F.2d 1476, 1482 (8th Cir.1992), or that the defendant had exclusive control of and access to the premises, *see Young–Bey,* 893 F.2d at 181. Moreover, the residence need not be an armed fortress, and the firearms need not be kept in the same room as the drug-related evidence. *See United States v. Curry,* 911 F.2d 72, 80 (8th Cir.1990), *cert. denied,* 498 U.S. 1094, 111 S.Ct. 980, 112 L.Ed.2d 1065 (1991). Rather, a § 924(c) conviction requires only that the weapon be present and available, in the house in which the drugs and cash are located, in the event it is needed. *United States v. LaGuardia,* 774 F.2d 317, 321 (8th Cir.1985). Because drug traffickers commonly use firearms to protect themselves, as well as their drugs and drug money, *see Young–Bey,* 893 F.2d at 181, the "use" of the weapon is satisfied by a showing of the weapon's presence and availability at a house where drugs are dealt, *see United States v. Drew,* 894 F.2d 965, 968 (8th Cir.), *cert. denied,* 494 U.S. 1089, 110 S.Ct. 1830, 108 L.Ed.2d 959 (1990).

Johnson's arguments are without merit. We already have held that the evidence was sufficient to link him to the residences in which he was found, and the application of this Circuit's § 924(c) law to the evidence admitted at Johnson's trial refutes his remaining contentions. At the Jackson Avenue residence, the .38–caliber Derringer was sitting on the kitchen table, where Johnson conducted his drug packaging and sales operations, and the .357 magnum was on the nightstand next to the bed in the master bedroom. Both weapons at the Jackson Avenue residence were easily accessible in the event Johnson needed to protect the occupants or their operation. Furthermore, the weapons were in plain view, so we cannot understand how Johnson can contend that he did not know they were present.

That the .44 magnum found at the Afton Road residence was hidden beneath the mattress need not detain us long. The presence in the adjacent closet of the weapon's ammunition indicates that Johnson was aware of the weapon's presence, and the placement of a large weapon beneath the mattress—which is consistent with the placement of a large weapon next to the bed at the Jackson Avenue residence—allowed Johnson to protect himself, Ealey, and the nearly $200,000 in currency that he kept only a few feet from the bed. Moreover, that the status of all three weapons was the same—each was fully loaded with hollow-point bullets—supports the conclusion that Johnson knew of and relied upon the presence of the .44 magnum to further his drug dealings. We hold that the jury reasonably could have concluded that Johnson kept the weapons that form the bases for Counts IV and VII present and available to aid in the commission of his drug trafficking crimes.

### C.

■ After being convicted on all counts with which he was charged, Johnson produced an affidavit signed by Elizabeth Smith stating that she owned the .44 magnum on which Count IV was based, had placed it under the mattress at the Afton Road residence, had not told Johnson that she had done so, and Johnson did not know of the weapon's presence. Claiming that this affidavit constituted new evidence, Johnson moved in the District Court for a new trial and for a hearing on his new trial motion. Johnson challenges the District Court's denial of these motions.

■ A new trial motion that is based on newly discovered evidence should be granted where the evidence is newly discovered; the movant has shown due diligence; and the new evidence is relevant to a material issue, probably would produce an acquittal on retrial, and is not merely cumulative or impeaching. *United States v. Tierney,* 947 F.2d 854, 862 (8th Cir.1991). The District Court's decisions on whether to grant new trials and hearings on such motions will not

be reversed absent a clear abuse of discretion. *United States v. Provost*, 921 F.2d 163, 165 (8th Cir.1990) (per curiam), *cert. denied*, 499 U.S. 968, 111 S.Ct. 1603, 113 L.Ed.2d 666 (1991).

The District Court properly denied Johnson's new trial motion because Johnson failed to demonstrate that he exercised due diligence when he failed to obtain Smith's statement before trial. Johnson surely knew before trial whether he was responsible for the weapon's presence under his mattress. If he believed he was not and wanted to present evidence to that effect, due diligence would have required Johnson, by contacting those who had access to the residence, to attempt before trial to ascertain who was responsible. Based on the information in her affidavit, Smith would appear to be an obvious candidate of such an inquiry. Because Johnson failed to demonstrate that he exercised due diligence, the District Court properly denied his new trial motion.

Furthermore, the evidence probably would not produce an acquittal on retrial. First, although Smith's affidavit states that Johnson was unaware of the weapon's presence when he and it were discovered in the house, Smith cannot possibly have the first-hand knowledge necessary to reach such a conclusion. We also note that Johnson's attorney argued to the jury during his closing argument that the government had failed to show who owned and possessed the various weapons; curiously, though, he never claimed to the jury that Johnson did not know the weapon was beneath the mattress. And Johnson certainly cannot claim that he realized only as a result of Smith's affidavit that he did not know of the weapon's presence.

Second, her statement that she owned the weapon and placed it beneath the mattress is suspect because she failed to provide it until after Johnson's trial and after the applicable statutes of limitations for her misconduct had run. Even assuming her statement to be true, however, it probably would not produce an acquittal on retrial, since Johnson need neither have owned the weapon nor placed it

beneath the mattress to support the firearms conviction, and the evidence, as discussed above, was sufficient to allow the jury to conclude that Johnson used the weapon in furtherance of his drug trafficking crimes.

■■■■■ Finally, a district court ordinarily may decide a new trial motion upon affidavits and without a hearing, *United States v. Begnaud*, 848 F.2d 111, 113 (8th Cir.1988), and Johnson failed to demonstrate the exceptional circumstances that would suggest the need for a hearing, *see United States v. Bednar*, 776 F.2d 236, 239 (8th Cir.1985) (per curiam). The facts alleged in the affidavit were not complicated, the District Court was familiar with the evidence in the case, and even assuming the veracity of Smith's affidavit Johnson had no basis for relief because he failed to make the required showing for a new trial. The District Court did not abuse its discretion when it denied Johnson's motions for a new trial and a hearing on the motion.

### D.

Before trial, Johnson filed a motion to suppress the government's evidence. Pursuant to the Magistrate Judge's[2] report and recommendation, the District Court granted the motion with regard to evidence seized that was beyond the scope of the warrants, and denied it with respect to all other evidence. Johnson argues that the District Court erred by not suppressing all of the government's evidence.

■■■■ On appeal, Johnson relies exclusively on Missouri law in arguing that the District Court improperly admitted the government's evidence. He argues that because Warren was a Blue Springs police officer, he lacked the authority to obtain and execute a search warrant in Grandview, and because the county drug task force to which Warren was assigned is a private organization, it could not confer upon Warren the necessary authority. Furthermore, Johnson claims, once the search warrant for the Jackson Avenue residence is invalidated, *Wong Sun v. United States*, 371 U.S. 471, 487–88, 83 S.Ct. 407,

---

**2.** The Honorable Robert E. Larsen, United States Magistrate Judge for the Western District of Missouri.

417–18, 9 L.Ed.2d 441 (1963), requires that the search warrant for the Afton Road residence also be invalidated because the affidavit used to secure the Afton Road search warrant was supported by evidence obtained pursuant to the Jackson Avenue search warrant.

Initially, we note that the District Court found that Warren's commission as a Jackson County deputy sheriff, which he had been before he joined Blue Springs's police force, still was in effect, thus authorizing him to obtain a search warrant for the Grandview residence. Because Johnson has not demonstrated that this finding was clearly erroneous, the Jackson Avenue search warrant was valid.

■ Whether the Jackson Avenue search warrant was obtained in violation of state law, however, is not an issue here. In a federal criminal prosecution, a challenge to a search and seizure conducted by state authorities is evaluated by application of federal Fourth Amendment standards. *United States v. Tate*, 821 F.2d 1328, 1330 (8th Cir. 1987), *cert. denied*, 484 U.S. 1011, 108 S.Ct. 712, 98 L.Ed.2d 662 (1988). Accordingly, we judge the conduct at issue here as if it had been undertaken by federal officers. *See United States v. Eng*, 753 F.2d 683, 686 (8th Cir.1985). Johnson has not alleged any violations of federal law. Accordingly, the District Court properly refused to suppress the government's evidence.

### E.

■ Finally, Johnson challenges two separate remarks by the District Court. During voir dire, the Court said:

> In a criminal trial, the defendant is presumed innocent unless proven guilty beyond a reasonable doubt. *This presumption remains with a defendant until you begin your deliberations.* The obligation is always on the government to prove a defendant's guilt and there is no obligation on the defendant to prove his innocence. Is there anyone who cannot accept these principles? I take it by your silence that you all could.

Trial Transcript Vol. I at 55 (emphasis added). Seizing on the underscored language, Johnson argues that the District Court misstated the law on the presumption of innocence.

■ Later, after the government finished presenting its evidence, the Court said:

> Okay. Ladies and gentlemen of the jury, the government has rested and *the defendant is not going to put on any evidence,* so it takes me to the point in the case where I will read some additional instructions to you, and if you'll bear with me, there are a few of them, I'll begin reading them at this time.

Trial Transcript Vol. II at 393–94 (emphasis added). Johnson argues that the underscored language in this passage constitutes a forbidden comment by the District Court on his right to remain silent.

■ Johnson failed to object at trial to either of these remarks. Accordingly, we evaluate them under the plain error standard. The plain error standard affords a court of appeals the discretion to provide a remedy for an aggrieved defendant who demonstrates that there was an error, which is a deviation from an unwaived legal rule; the error was plain, meaning clear or obvious; and the error affected the defendant's substantial rights, which requires a showing that the error was prejudicial and affected the trial's outcome. *United States v. Olano*, —— U.S. ——, —— – ——, 113 S.Ct. 1770, 1777–78, 123 L.Ed.2d 508 (1993). A court of appeals should exercise this discretion if the forfeited error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Id.* —— U.S. at ——, 113 S.Ct. at 1779 (quoting *United States v. Atkinson*, 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555 (1936)) (alteration in *Olano*).

Immediately following the second remark challenged here, the District Court formally read the jury instructions. Instruction Number 12 stated in part:

> As I told you at the beginning of trial, an information is simply an accusation. It is not evidence of anything. To the contrary, each defendant is presumed to be innocent. Thus the defendant John Edward Johnson, even though charged, begin

[sic] the trial with no evidence against him. The presumption of innocence alone is sufficient to find the defendant not guilty and can be overcome only if the government proves, beyond a reasonable doubt, each essential element of the crime charged.

There is no burden upon a defendant to prove that he is innocent. Accordingly, the fact that a defendant did not testify must not be considered by you in any way, or even discussed, in arriving at your verdict.

Brief for Appellee at 37 (emphasis appearing in brief omitted).[3]

There were no plain errors here. Any ambiguity produced by the first claimed error was cleared up by the words next uttered by the District Court, where the Court explained that "[t]he obligation is always on the government to prove a defendant's guilt and there is no obligation on the defendant to prove his innocence." The second purported error was a transitional statement made as the trial proceeded, not a comment on Johnson's decision not to testify. Furthermore, the jury was instructed clearly and properly on both the burden-of-proof issue and the appropriateness of Johnson's decision not to testify. After examining these purported errors in their immediate contexts, as parts of the trial as a whole, and in light of the applicable instruction read to the jury, we conclude that Johnson has not made the necessary showings to obtain relief under the plain error standard.

### III.

Having carefully reviewed Johnson's claims, we find each of them to be without merit. The judgment of the District Court is affirmed.

---

**3.** This jury instruction appears nowhere else in the record. Johnson did not question in his reply brief the version of this instruction reprinted in the government's brief, and we presume that this version is an accurate reflection of the instruction delivered at trial.