UNITED STATES of America, Appellee,

v.

Roger Allen WOLFE, Appellant.

No. 93–2103.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 14, 1993.

Decided March 15, 1994.

Counsel who presented argument on behalf of the appellant was Craig E. Cascarano of Minneapolis, MN.

Counsel who presented argument on behalf of the appellee was Carol A. Needles, AUSA, of Minneapolis, MN.

Before WOLLMAN, Circuit Judge, HEANEY, Senior Circuit Judge, and LOKEN, Circuit Judge.

WOLLMAN, Circuit Judge.

Roger Allen Wolfe was convicted of conspiring to manufacture more than 100 marijuana plants (21 U.S.C. §§ 846 and 841(a)(1)), aiding and abetting in the manufacture of more than 100 marijuana plants (21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2), attempting to manufacture more than 100 marijuana plants (21 U.S.C. §§ 846 and 841(a)(1)), using a firearm in connection with a drug trafficking crime (18 U.S.C. § 924(c)(1)), and failing to appear for a pretrial hearing as required by the conditions of his release (18 U.S.C. § 3146(a)(1)). Wolfe appeals his drug- and gun-related convictions based on insufficient evidence. We affirm.

Wolfe owned two pieces of property in rural Minnesota—one in Morrison County and one in Redwood County. On September 18, 1990, law enforcement officers executed a search warrant at the Morrison County property. They discovered a large marijuana plantation with 488 well-tended marijuana plants and a Quonset hut containing drying marijuana plants, gardening equipment, and packaging materials. In the basement of the residence on the property, they found a marijuana grow room with forty-five marijuana plants in pots under grow lights and ninety-two marijuana seedlings planted in individual sections of PVC-type pipe. Throughout the

house, they found marijuana seeds, drying marijuana plants, and processed marijuana. Roger Wolfe owned most of the twelve vehicles parked on the property; Stacey Town owned the rest.

On September 20, 1990, officers executed a search warrant at the Redwood County property. In the basement of the house, they discovered an eighty-five to ninety percent completed hydroponic growing system with 198 fully equipped growing chambers, grow lights, fertilizer, starter pots, water pumps and filters, PVC pipes and end caps, and an electrical timer. On the upper floors, officers found a container of marijuana seeds, approximately 15 grams of marijuana, pamphlets which discussed growing marijuana and cooking it into hashish, a one pound scale, advertisements for bulk containers, and notations indicating drug sales. They did not find any invoices, bills, or records that suggested Wolfe was engaged in any legitimate business. Officers also discovered a loaded Blackhawk .41 magnum revolver in a holster hanging in the closet to the right of the front door and a loaded Browning Arms nine millimeter handgun in the master bedroom within an arm's-length reach of the bed.

Wolfe's co-defendant, Stacey Town, testified for the government. He stated that he had moved into the Morrison County house with Wolfe in November 1988. Wolfe had lived there since 1986, had purchased all of the equipment needed to grow marijuana, and had grown marijuana on the property in previous years. Wolfe instructed Town on how to grow marijuana and allowed him to live rent-free in return for growing and tending the plants. They were to split any profits made from the operation. Wolfe moved to the Redwood County house in December 1989, but remained active in the Morrison County grow operation and was going to help harvest the 1990 marijuana crop. Town testified that Wolfe had taken thirty pounds of marijuana from the Morrison County house and had hidden it in the crawl space above the garage of the Redwood County house. He further testified that Wolfe had begun building the hydroponic system by the summer of 1990 and that Wolfe had told him that he planned to grow marijuana in it.

Town testified that he was visiting Wolfe at the Redwood County house when his girlfriend called at 1:00 a.m. and told them that the Morrison County house had been raided. They packed quickly without turning on the lights. Town testified that Wolfe packed the paper bag in which he kept his money and that the bag looked as if it held two stacks of bills, four to five inches high. Town followed Wolfe to a friend's farm, where they filled their gas tanks and discussed their next move. Town decided he would return to Morrison County and talk to a lawyer; Wolfe told Town that he was going to return to the Redwood County house and wait for the police to come. Wolfe left the state the next morning.

Wolfe testified that he did not know anything about the marijuana operation in Morrison County and that he had purchased the property in order to create a wildlife sanctuary. He testified that he never planned to grow anything in the hydroponic system, but that he intended to sell the plans to the system. He further testified that he had last used the guns for target practice in the early 1980's.

■ When considering a sufficiency-of-evidence question, we view the evidence in the light most favorable to the verdict and accept all reasonable inferences supporting the conviction. *United States v. Ivey*, 915 F.2d 380, 383 (8th Cir.1990). "We reverse only if we conclude that a reasonable fact-finder must have entertained a reasonable doubt about the government's proof of one of the offense's essential elements." *Id.*

■ The evidence was more than sufficient to sustain the jury's verdict of guilty with respect to the drug-related convictions. In order to convict a defendant of conspiracy, "the government must prove beyond a reasonable doubt that there was an agreement to achieve some illegal purpose, that the defendant knew of the agreement, and that the defendant knowingly became a part of the conspiracy." *United States v. Rogers*, 982 F.2d 1241, 1244 (8th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 3017, 125 L.Ed.2d 706

(1993). Town's testimony and the evidence obtained from the search of the Morrison County property sufficiently established Wolfe's involvement with Town in a conspiracy to manufacture marijuana. Wolfe supplied the land, the equipment, and the know-how; Town supplied most of the labor; and they agreed to split any profits made from the operation. This same evidence also established the essential elements of aiding and abetting: Wolfe associated himself with the unlawful venture; he participated in it as if it were something he wished to bring about; and he sought by his actions to make it succeed. *See United States v. Lanier,* 838 F.2d 281, 284 (8th Cir.1988).

■ In order to prove the attempt charge, the government had to show that Wolfe intended to grow marijuana and that he intentionally carried out some act that was a substantial step toward that goal. *See United States v. Wagner,* 884 F.2d 1090, 1095–96 (8th Cir.1989), *cert. denied,* 494 U.S. 1088, 110 S.Ct. 1829, 108 L.Ed.2d 958 (1990). The evidence from the search of the Redwood County house revealed that the hydroponic grow system was almost complete and that all of the materials needed for its operation were within the house, including marijuana seeds. In addition, Town testified that Wolfe had told him that he intended to grow marijuana in the system. The jury was free to disbelieve Wolfe's testimony to the contrary.

■ Wolfe also contends that the evidence was insufficient to support a finding that the firearms found in the Redwood County house were used during and in relation to a drug trafficking crime within the meaning of 18 U.S.C. § 924(c). In order to obtain a 924(c) conviction, "the government need not show a defendant's actual physical possession of the firearm or that he brandished, displayed, or discharged it." *United States v. Johnson,* 12 F.3d 827, 833 (8th Cir.1994) (citations omitted). We have held that a violation of Section 924(c) is supported by a showing that the defendant kept firearms readily accessible to protect and facilitate his drug enterprise. *United States v. Angell,* 11 F.3d 806, 810 (8th Cir.1993); *United States v. Young–Bey,* 893 F.2d 178, 181 (8th Cir.1990). "[T]he

residence need not be an armed fortress, and the firearms need not be kept in the same room as the drug-related evidence." *Johnson,* 12 F.3d at 833. Further, it is "permissible for juries to infer that firearms found among a drug trafficker's paraphernalia are used to further the drug venture and are thus used during and in relation to drug trafficking within the meaning of section 924(c)." *Young–Bey,* 893 F.2d at 181.

Viewed in the light most favorable to the government, the record establishes that Wolfe brought the guns with him when he moved to Redwood County and that, while constructing an elaborate marijuana grow operation and keeping drugs, drug paraphernalia, and drug proceeds in the house, he kept the guns loaded and readily accessible near the front door and within an arm's-length reach of his bed. *See Johnson,* 12 F.3d at 833 (fact that weapons were fully loaded supports conclusion that defendant knew of and relied upon presence of weapons to further drug dealings). We conclude that, under these circumstances, the evidence was sufficient to support the finding that Wolfe used the firearms to protect and facilitate his drug trafficking.

The convictions are affirmed.