UNITED STATES of America, Appellee,

v.

Jody Raymond ERICKSON, Appellant.

No. 92–1607.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 13, 1992.

Decided Feb. 5, 1993.

Rehearing En Banc Denied March 9, 1993.

Barry V. Voss, Minneapolis, MN, for appellant.

Jeffrey S. Paulsen, Asst. U.S. Atty., Minneapolis, MN, for appellee.

Before RICHARD S. ARNOLD, Chief Judge, FLOYD R. GIBSON, Senior Circuit Judge, and WOLLMAN, Circuit Judge.

RICHARD S. ARNOLD, Chief Judge.

Jody Raymond Erickson appeals his conviction for aiding and abetting Eugene Pearson in distributing eight ounces of cocaine in violation of 21 U.S.C. § 841(a). Erickson argues that there was insufficient evidence to convict him because the government failed to prove beyond a reasonable doubt that he had participated knowingly in the drug sale. We affirm.

## I.

On June 26, 1991, in a recorded telephone call, Eugene Pearson and a police infor-mant, Shawn Carlson, agreed that Carlson would stop by a residence in St. Louis Park, Minnesota, to meet with a third person. Trial Transcript 65; Addendum 3.[1] Pearson told Carlson that the third person was with him, but that person would soon go to St. Louis Park and would call Carlson then. Addendum 3. Pearson did not mention drugs during this call.

Later that day, Carlson called Pearson to say that he had not heard from the third person. Pearson gave Carlson Erickson's name and telephone number and told him to call Erickson. *Id.* at 5–7. Pearson also asked Carlson if he had $50.00. *Id.* at 7. When Carlson told him that he had only $12.00, Pearson told him to give that money to Erickson and to tell Erickson that Pearson would "give him the rest." *Id.* In a later, recorded conversation, Erickson gave Carlson directions to the St. Louis Park apartment. *Id.* at 8–10. Carlson went there and recorded his meeting with Erickson. Trial Transcript 65–66.

During that meeting, Erickson twice asked Carlson if he had $50.00 for him. Carlson denied knowing about the money and told Erickson to talk with Pearson. Addendum 11, 12; Trial Transcript 201, 203. Erickson then gave Carlson a box wrapped in duct tape. Trial Transcript 68–69. Erickson said "[h]e wraps it up so tight." Addendum 12. Although neither person mentioned drugs during this meeting, and drugs were not mentioned in any of Erickson's recorded conversations, the box Erickson gave Carlson contained approximately eight ounces of cocaine. Trial Transcript 205, 270–71. After hearing this evidence, a jury convicted Erickson of aiding and abetting in the distribution of cocaine. The District Court[2] sentenced him to 37 months in prison, three years of supervised release, and a special assessment of $50.00.

## II.

■ Erickson does not claim that he did not distribute drugs, only that the govern-

---

1. The Appellants' Addendum is a transcript of tape-recorded conversations between Carlson and Pearson and between Carlson and Erickson. These recordings were played at trial.

2. The Hon. Diana E. Murphy, Chief Judge, United States District Court for the District of Minnesota.

ment did not prove beyond a reasonable doubt that he did so knowingly, as 21 U.S.C. § 841(a)(1) required. This, he argues, means that the evidence was insufficient to convict him and that we must overturn the verdict.

In reviewing the verdict, we must look at the evidence in the light most favorable to the government, and give the government the benefit of all reasonable inferences. *United States v. Erdman,* 953 F.2d 387, 389 (8th Cir.), *cert. denied,* — U.S. ——, 112 S.Ct. 3009, 120 L.Ed.2d 883 (1992); *United States v. Young–Bey,* 893 F.2d 178, 181 (8th Cir.1990). We must affirm a jury verdict if there is substantial evidence to support it. *United States v. Schubel,* 912 F.2d 952, 955 (8th Cir.1990). This evidence may be circumstantial. *Erdman,* 953 F.2d at 389. We may reverse a jury verdict only if no reasonable jury could have found the defendant guilty beyond a reasonable doubt. *Young–Bey,* 893 F.2d at 181.

Substantial evidence supports the jury verdict. The jury could have concluded from the evidence at trial that Erickson knew the package contained drugs. Erickson was with Pearson when Pearson arranged for Carlson to pick up the package. Even though Pearson did not mention drugs during that telephone call, Erickson later told Carlson that he expected to receive $50.00, which the jury could have interpreted to be his payment for acting as a go-between for Pearson and Carlson. The jury also may have viewed such a payment as unlikely if the box contained something legal. (Testimony at trial placed the value of the drugs at approximately $12,000 to $13,000. Trial Transcript 203.) Further, the jury could have concluded that Erickson was familiar with the contents of the box and with the way Pearson usually wrapped drug packages because he stated that Pearson "wraps it up so tight."

During the same meeting, Carlson said, apparently of his drug customer, "the guy has enough money for another one right off the git go, have you got it or does he." Addendum 11; Trial Transcript 201–02. According to the transcript of this meeting,

Erickson responded "Herk does." Addendum 11. Pearson is nicknamed "Herk." Trial Transcript 3, 74. Carlson responded "OK." Addendum 11. Carlson later testified that "another one" referred to "another eight ounces" of cocaine. Trial Transcript 71. From this, the jury could have concluded that Erickson directed Carlson to deal with Pearson.

Erickson argues that, in responding to Carlson's inquiry, he asked "He does?" rather than said "Herk does," showing that he did not necessarily know that cocaine was in the box. The argument is unpersuasive. Although Carlson admitted on cross-examination that this was a possible interpretation of the tape recording, Trial Transcript 202, the jury was free to disregard Erickson's explanation. It might have done so because Carlson did not answer Erickson's alleged question, but instead said "OK," indicating that his own question had been answered. Moreover, having listened to a tape of the conversation, the Court finds that the jury could have found that Erickson said "Herk does." In any case, even if the jury believed Erickson's explanation, it also could have believed that he was showing interest in Carlson's customer's wish to buy more drugs by asking "He does?." Thus, the jury reasonably could have concluded that Erickson knew of and was being paid for his part in the drug sale.

The jury also could have concluded that Erickson knew what was inside the box because he initially wanted to meet with Carlson at a movie theater rather than at the St. Louis Park residence, perhaps to keep the drug sale on neutral territory, and because Erickson called Pearson after Carlson left, possibly to confirm delivery and to request his $50.00, although this call was not recorded. In addition, Erickson was with Pearson when he arranged for Carlson to meet Erickson at the St. Louis Park address. Presumably, he heard Pearson say "I don't even want to talk" and could have interpreted this to mean that Pearson did not wish to discuss drugs on the telephone.

In arguing that the government did not prove that he knew the cardboard box he gave Carlson contained cocaine, Erickson tries to distinguish his case from *United States v. Moore,* 911 F.2d 140, 144–45 (8th Cir.1990), and *United States v. Jones,* 880 F.2d 55, 64–65 (8th Cir.1989). This Court found sufficient evidence that the defendants had knowingly distributed cocaine in both of those cases. Erickson says that, unlike Moore and Jones, he was not shown to have tried to disassociate himself from the package that contained drugs, he was not shown to have acted nervously when in possession of the package, he did not provide Carlson with a sample gram, and no evidence was presented at trial to show that he had been involved in earlier acts of drug distribution. These distinctions do not answer the question raised on appeal, because it is not necessary to show these exact facts in order to find knowing participation in drug distribution. Indeed, not all of these factors are present in both *Moore* and *Jones.*

This case also differs from *United States v. Samad,* 754 F.2d 1091 (4th Cir. 1984), on which Erickson relies. In *Samad,* the Court held that Samad's acceptance from a postal carrier of a package containing heroin and his association with his roommate—who opened the package, found the heroin hidden under a shirt collar in the package, and hid it before the police arrived—did not show beyond a reasonable doubt that Samad knew that the package contained heroin. *Id.* at 1099. The jury in Erickson's case had considerably more evidence to rely on.

Erickson's argument that he could have believed that something other than cocaine was in the box is not inconsistent with the evidence presented. However, this is not enough. "Although the evidence must be consistent with guilt, it need not be inconsistent with every other reasonable hypothesis." *United States v. Newton,* 756 F.2d 53, 54 (8th Cir.1985). Here, even though the jury could have found otherwise, we cannot say that no rational trier of fact could have interpreted the government's evidence as showing that Erickson knew

that he was assisting in the distribution of cocaine. We affirm.