UNITED STATES of America, Appellee,

v.

Guadalupe MEJIA, Jr., Appellant.

No. 93–2120.

United States Court of Appeals, Eighth Circuit.

Submitted Aug. 13, 1993.

Decided Sept. 30, 1993.

---

**4**

Thomas M. Tuntland, Mandan, ND, argued, for appellant.

Gary Annear, Fargo, ND, argued, for appellee.

Before JOHN R. GIBSON, MAGILL, and BEAM, Circuit Judges.

PER CURIAM.

Guadalupe Mejia, Jr., appeals his conviction for using a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1). He argues that the evidence was insufficient to sustain the jury's verdict. We disagree and affirm.

After pleading guilty to charges of being a felon in possession of a firearm and ammunition, Mejia went to trial on a charge of using a firearm during the commission of a drug trafficking crime: possession of marijuana with intent to distribute it and distributing marijuana. The issue for trial was whether Mejia used or carried a weapon during and in relation to the drug crime.

The evidence revealed that on January 19, 1992, Mejia arrived in Bismarck, North Dakota, and visited Lola LaFromboise. She testified that Mejia asked whether she knew anyone interested in purchasing some marijuana. LaFromboise told Mejia that she did

not know of any potential customers. After Mejia left, LaFromboise informed the police that Mejia had tried to sell her marijuana. She agreed to assist the police in apprehending Mejia by making a "controlled buy" of marijuana from him while wearing a body transmitter. LaFromboise subsequently called Mejia and arranged to purchase a bag of marijuana for sixty dollars. She testified that the police gave her the money, and an officer drove her to within one block of Kenneth Frye's apartment, where Mejia had been staying. LaFromboise then entered the apartment, purchased the marijuana from Mejia, returned to the officer's car, and turned the marijuana over to the officer. She testified that she did not see Mejia with a weapon during the sale.

Both Frye and a visitor to his apartment, Steven Lone Wolf, testified that they observed a gun in Mejia's possession. Lone Wolf testified that the gun was not loaded and that Mejia showed the weapon to him during a conversation about hunting. Frye testified that he could not tell whether the gun was loaded when he looked at it. Frye witnessed the drug transaction between Mejia and LaFromboise, and testified that the police arrived about forty-five minutes after it occurred.

Several law enforcement officers executed a search warrant at Frye's apartment after the transaction. Paul Leingang, of the City of Mandan Police Department, testified that he found a loaded handgun in a kitchen drawer next to a small quantity of marijuana. Tom Dahl, of the North Dakota Bureau of Criminal Investigation, testified that he found a bag containing a total of thirteen ounces of marijuana in a hall closet near the kitchen. Each ounce was packaged in a smaller plastic baggie. Robert Haas, a Bismarck police officer, testified that he handcuffed Mejia and searched his pockets. The search uncovered fifty-five dollars and three .38 caliber bullets in Mejia's pants pocket. Haas stated that he found three more bullets in Mejia's jacket pocket along with a plastic bag of marijuana. Dahl testified that the serial numbers on the fifty-five dollars recovered from Mejia matched the serial numbers the officers had recorded from the "buy-

money" they had given LaFromboise. Michael Nason, of the North Dakota Bureau of Criminal Investigation, testified that he searched Mejia's vehicle, and found a box of .38 special ammunition under the front passenger seat of the vehicle. Burton Rutter, an agent with the Bureau of Alcohol, Tobacco, and Firearms, interviewed Mejia concerning the origin of the weapon. According to Mejia's statement, he obtained the gun from two men in Plainview, Texas, and brought the weapon back to North Dakota with him. His girlfriend purchased the ammunition in Mobridge, South Dakota. Mejia admitted that he kept the loaded weapon in a kitchen drawer at Frye's Bismarck apartment and that he hid the remainder of the ammunition in his girlfriend's car. The jury found Mejia guilty of violating section 924(c)(1) based on this evidence.

On appeal, Mejia argues that the government failed to establish that he used or carried the firearm during and in relation to the drug trafficking crime. Mejia concedes that his loaded weapon was in the apartment at the time he sold the marijuana, but maintains that its presence was coincidental and that the weapon had no connection to that crime.

Section 924(c)(1) provides in pertinent part:

> Whoever, during and in relation to any ... drug trafficking crime ... for which he may be prosecuted in a court of the United States, uses or carries a firearm, shall, in addition to the punishment provided for such ... drug trafficking crime, be sentenced to imprisonment for five years....

In reviewing Mejia's challenge to the sufficiency of the evidence to sustain the conviction, "we must affirm the conviction if, after viewing the evidence in the light most favorable to the government and giving the government the benefit of all reasonable inferences, we conclude that a reasonable jury could have found [defendant] guilty beyond a reasonable doubt." *United States v. Jones,* 990 F.2d 1047, 1048 (8th Cir.1993).

With regard to whether Mejia "used" the firearm within the meaning of the statute, we have held that "the mere presence and ready availability of a firearm at a house where drugs are dealt constitutes the 'use' of a gun during a narcotics offense." *United States v. Drew,* 894 F.2d 965, 968 (8th Cir.), *cert. denied,* 494 U.S. 1089, 110 S.Ct. 1830, 108 L.Ed.2d 959 (1990); *see also Jones,* 990 F.2d at 1049–50 (defendant need not brandish or discharge firearm for jury to find defendant used firearm during and in relation to drug trafficking crime; "use" may be inferred from firearm's availability and presence). Moreover, concerning the phrase "in relation to" in section 924(c)(1), the Supreme Court recently observed that it is "expansive." *Smith v. United States,* —— U.S. ——, ——, 113 S.Ct. 2050, 2058, 124 L.Ed.2d 138 (1993). The phrase "clarifies that the firearm must have some purpose or effect with respect to the drug trafficking," *id.* at ——, 113 S.Ct. at 2059, and requires that the firearm " 'facilitat[e] or ha[ve] the potential of facilitating' the drug trafficking offense," *id.* (alteration in original) (quoting *United States v. Stewart,* 779 F.2d 538, 539 (9th Cir.1985)); *see Jones,* 990 F.2d at 1049 (section 924(c)(1) conviction warranted if presence of firearm helps protect supply of drugs).

We conclude that the government produced sufficient evidence to support the jury's verdict. The police found Mejia's loaded handgun in the kitchen drawer of the small apartment in which the drug deal occurred, across the hall from the closet where they discovered thirteen ounces of marijuana. The gun was readily available and could easily have been used by Mejia to protect his drug supply, should the need have arisen. Thus, the weapon had the potential of facilitating the drug transaction. Contrary to Mejia's contention, the fact that the drug deal took place in the living room of the apartment and the weapon was in the kitchen is not significant. *See United States v. Sykes,* 977 F.2d 1242, 1248 (8th Cir.1992). We have affirmed at least four other section 924(c)(1) convictions "when the guns and drugs have been located in different parts of a residence." *Id.: see United States v. Bennett,* 956 F.2d 1476, 1482–83 (8th Cir.1992); *United States v. Townley,* 929 F.2d 365, 367 (8th Cir.1991); *United States v. Curry,* 911 F.2d 72, 79–80 (8th Cir.1990), *cert. denied,*

498 U.S. 1094, 111 S.Ct. 980, 112 L.Ed.2d 1065 (1991).

Accordingly, we affirm.