UNITED STATES of America, Appellee,

v.

**Roosevelt SIMMS, III, Appellant.**

UNITED STATES of America, Appellee,

v.

**Edwin Dwane RICKETTS, Appellant.**

Nos. 93–2556, 93–2623.

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 13, 1994.

Decided March 10, 1994.

Counsel who presented argument on behalf of appellant Simms was James Knappenberger, Clayton, MO. Additional attorney appearing on the brief was Charles M. Shaw. Counsel who presented argument on behalf of appellant Ricketts was Eric Butts, St. Louis, MO.

Counsel who presented argument on behalf of the appellee was Steven Holtshouser, St. Louis, MO.

Before BOWMAN and WOLLMAN, Circuit Judges and ALSOP,* Senior District Judge.

ALSOP, Senior District Judge.

Roosevelt Simms and Edwin Ricketts were convicted by a jury of possession with intent to distribute more than 50 grams of a substance containing cocaine base in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(iii). Simms was also convicted of using a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c). The district court[1] sentenced Simms to 264 months on the possession charge and 60 months on the gun charge, to be served consecutively. Ricketts was sentenced to 292 months.

Simms and Ricketts appeal their convictions and their sentences. We affirm.

## I. BACKGROUND

On September 15, 1992, law enforcement officers from Gardenia, California intercepted a United Parcel Service package addressed to "Jesse Brock, 1915 East Warne, St. Louis, Missouri." The package was opened pursuant to a state court search warrant, and, inside the package, the officers found over 500 grams of cocaine base or "crack" cocaine. The officers then contacted Detective Timothy Lachenicht of the St. Louis Police Department, advised him of their findings, and forwarded the package to him for the purpose of performing a controlled delivery.

Detective Lachenicht obtained a state court search warrant for 1915 East Warne and an order permitting him to place an electronic tracking device inside the package. On September 17, Detective Lachenicht received the package, removed all of its contents except for two one-ounce bags of cocaine base, inserted the electronic tracking device, and resealed the package for delivery.

On that same day, Detective Lachenicht disguised himself as a UPS delivery man and drove to 1915 East Warne. While leaving the delivery truck, Detective Lachenicht saw Ray Calhoun walking or running toward the house and shouting that the package had arrived. When he got to the porch, Detective Lachenicht announced that he had "a package for Jesse Brook." At trial, Detective Lachenicht testified that Ricketts said, "I'll take that," from inside the house. Ricketts then came to the front door, said, "I'll take that" again, and signed for the package with the name "Wortham." Ricketts testified that it was his sister who accepted the package and that he signed the name Wortham because this was his sister's last name.

Detective Lachenicht testified that, while he (Lachenicht) was still on the front porch, Ricketts turned to Calhoun and said, "Go get Roosevelt. Tell him his package is here."

---

* The HONORABLE DONALD D. ALSOP, Senior United States District Judge for the District of Minnesota, sitting by designation.

1. The Honorable Jean C. Hamilton, United States District Judge for the Eastern District of Missouri.

Ricketts denied making this statement and denied even knowing Simms at that time. Ricketts testified that the house in which his family lived was owned by a family named Brock, and he assumed that this package, which was addressed to "Jesse Brock," was theirs. He further testified that he told Calhoun to contact the "Hygrades," who lived at 1926 East Warne, because the Hygrades are related to the Brocks.

Calhoun then went across the street to 1926 East Warne, while Ricketts remained on the porch of 1915 East Warne. Detective Lachenicht returned to his vehicle, left East Warne, and went around the block to the rear of 1926 East Warne.

From this point on, the surveillance was conducted by United States Postal Inspector Dennis Hearne. Inspector Hearne testified that he saw Calhoun return to 1915 East Warne, obtain the package from Ricketts, and take it across the street to Simms, who then went inside 1926 East Warne. At trial, Ricketts denied giving the package to Calhoun. Shortly after Simms took the package inside 1926 East Warne, the electronic tracking device activated, indicating that the package had been opened. The police then converged on 1926 East Warne.

Detectives Lachenicht and Hicks, who were positioned behind 1926 East Warne, saw Simms attempting to leave the rear of the building. When Simms was ordered to stop, he turned and ran back into the building with the package. The two detectives then pursued Simms into the building and up a flight of stairs. Halfway up the stairs, Simms stopped on a landing and threw the package out a window.

Simms then continued up the stairs to the second floor, where he was apprehended and arrested in a middle bedroom. Detective Lachenicht testified that, in the bedroom, he found a loaded .25 caliber automatic handgun in a holster on top of a dresser. Next to the handgun was an electronic paging device from Los Angeles, California. An identification card seized from Simms listed a Los Angeles address. In a subsequent search, the police also found two suitcases with the name "R. Simms" on them in the bedroom where he was arrested.

Ricketts and Calhoun were also arrested. Detective Lachenicht testified that Ricketts waived his Miranda rights following his arrest and gave an oral statement. In this statement, Ricketts said that an individual he met in a bar gave him $100 in cash and advised him that he could obtain more by cooperating. A women he knew to be a crack addict then approached him and asked him to wait for the package in exchange for another $200. Ricketts waited for the package on September 16, but the package did not arrive. The same woman then reapproached him and told him to wait again for the package on September 17. The woman gave Ricketts a piece of crack cocaine for waiting the second time. At trial, Ricketts denied making this post-arrest statement.

At the close of the government's case and at the close of all the evidence, the district court overruled Simms and Ricketts's motions for judgment of acquittal. On March 5, 1993, the jury found both Simms and Ricketts guilty of possessing cocaine base with the intent to distribute (Count 1). The jury also found Simms guilty of using a firearm during and in relation to a drug trafficking crime (Count 2).

On May 21, 1993, the district court sentenced Ricketts to 292 months, based upon a total offense level of 36, a criminal history category of V, and a guideline range of 292 to 365 months. On June 2, 1993, Simms was sentenced to 264 months on Count 1 and 60 months on Count 2, to be served consecutively. This sentence was based upon a total offense level of 36, a criminal history category of III, a guideline range of 235 to 293 months on Count 1, and a mandatory, consecutive five-year-term of imprisonment on Count 2.

On appeal, Simms argues that there was insufficient evidence to convict him on the firearm charge, that the "reasonable doubt" jury instruction given by the district court was erroneous, and that he was denied effective assistance of counsel. Ricketts argues that there was insufficient evidence to convict him on the possession charge. Both Simms and Ricketts raise equal protection and due

process challenges to the guideline sentences for cocaine base.

## II. DISCUSSION

### A. Roosevelt Simms

■ 1. Simms first argues that there was insufficient evidence to convict him of using a firearm in relation to a drug trafficking crime and that the district court erred by denying his motion for judgment of acquittal. In reviewing Simms's challenge to the sufficiency of the evidence, "we must affirm the conviction if, after viewing the evidence in the light most favorable to the government and giving the government the benefit of all reasonable inferences, we conclude that a reasonable jury could have found [Simms] guilty beyond a reasonable doubt." *United States v. Mejia*, 8 F.3d 3, 5 (8th Cir.1993) (per curiam).

■ Section 924(c)(1) of Title 18 provides that "Whoever, during and in relation to any crime of ... drug trafficking ... uses or carries a firearm, shall, in addition to the punishment provided for such ... drug trafficking crime, be sentenced to imprisonment for five years...." The phrase "in relation to" has an "expansive" meaning. *Smith v. United States*, ── U.S. ──, ──, 113 S.Ct. 2050, 2058, 124 L.Ed.2d 138 (1993). This phrase "clarifies that the firearm must have some purpose or effect with respect to the drug trafficking crime," and requires that the firearm " 'facilitat[e], or ha[ve] the potential of facilitating,' the drug trafficking offense." *Id.* at ──, 113 S.Ct. at 2059 (alteration in original) (quoting *United States v. Stewart*, 779 F.2d 538, 540 (9th Cir.1985)).

■ Section 924(c)(1) requires the prosecution to prove two separate elements. First, "the prosecution must demonstrate that the defendant 'use[d] or carrie[d] a firearm.' Second, it must prove that the use or carrying was 'during and in relation to' a drug trafficking crime." *Id.* at ──, 113 S.Ct. at 2053 (alteration in original) (quoting 18 U.S.C. § 924(c)(1)). The "mere possession" of a firearm is insufficient to support a conviction under this section. *United States v. Lyman*, 892 F.2d 751, 753 (8th Cir.), *cert. denied*, 498 U.S. 810, 111 S.Ct. 45, 112 L.Ed.2d 21 (1990). However, "18 U.S.C. § 924(c)(1) reaches the possession of a firearm which in any manner facilitates the execution of a felony involving drug trafficking." *United States v. Williams*, 982 F.2d 1209, 1214 (8th Cir.1992). "The government need not show that [the defendant] was in actual possession of the firearm, or that [the defendant] brandished or discharged it. The jury need only find a 'sufficient nexus' between the gun and the drug trafficking crime." *United States v. Watson*, 953 F.2d 406, 409 (8th Cir.1992) (citations omitted). To establish this nexus, the gun need not "be located in the room where the drug transaction occurs." *United States v. Horne*, 4 F.3d 579, 587 (8th Cir.1993), *cert. denied*, ── U.S. ──, 114 S.Ct. 1121, 127 L.Ed.2d 2130 (1994). "[A] § 924(c) conviction requires only that the weapon be present and available in the house in which the drugs and cash are located, in the event it is needed." *United States v. Johnson*, 12 F.3d 827, 833 (8th Cir.1994).

■ Simms was arrested after he threw an opened package containing cocaine base out a window and ran upstairs to a bedroom. In the bedroom where he was arrested, police officers found a loaded handgun on a dresser next to a pager from Los Angeles. Simms's identification card listed a Los Angeles address. The police also found two suitcases with Simms's name on them in the bedroom. From this evidence, we conclude that a jury could reasonably infer that Simms used the firearm during and in relation to the underlying drug crime. *See Johnson*, 12 F.3d at 833 (handguns on kitchen table where drug packaging and sales conducted and on nightstand in bedroom); *Mejia*, 8 F.3d at 4 (handgun in kitchen drawer next to small quantity of drugs); *United States v. Boykin*, 986 F.2d 270, 273–74 (8th Cir.) (handguns in upstairs bedroom, drugs and cash in kitchen and living room downstairs), *cert. denied*, ── U.S. ──, 114 S.Ct. 241, 126 L.Ed.2d 195 (1993); *United States v. Jones*, 990 F.2d 1047, 1048–50 (8th Cir.1993) (handgun hanging on back of bedroom door adjacent to closet with cash and drugs), *cert. denied*, ── U.S. ──, 114 S.Ct. 699, 126 L.Ed.2d 666 (1994).

2. Simms also argues that the district court erred by giving the jury the following instruction on "reasonable doubt":

This is a criminal case, as you know. The burden to make out the guilt of the defendant on trial in this case is upon the Government, that burden the Government assumes in the beginning and carries throughout to the end. This burden is met only by showing to you the guilt of the defendant beyond a reasonable doubt. The law never imposes upon a defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence.

All of the presumptions of the law are in favor of innocence and the defendant is presumed to be innocent until proven guilty. This presumption of innocence attends and protects the defendant throughout the trial. It is met and overcome only by evidence coming forward in the case which shows and establishes the defendant's guilt beyond a reasonable doubt. Unless you find the defendant guilty beyond a reasonable doubt, you shall acquit him.

It is not required that the Government prove guilt beyond all possible doubt. The test is one of reasonable doubt. A reasonable doubt is a doubt based upon reason and common sense—the kind of doubt that would make a reasonable person hesitate to act. Proof beyond a reasonable doubt must, therefore, be proof of such a convincing character that you would be willing to rely and act upon it unhesitatingly. Putting it in another way, a reasonable doubt means a doubt based on reason and not the mere possibility of innocence.

Simms argues that the third paragraph of this instruction impermissibly lowered the government's burden of proof. In particular, Simms objects to the following phrases: "A reasonable doubt is a doubt based upon reason and common sense" and "a reasonable doubt means a doubt based on reason and not the mere possibility of innocence."

The third paragraph of the district court's instruction is also almost identical to Eighth Circuit Model Jury Instruction 3.11, which states, in part, that "[a] reasonable doubt is a

doubt based upon reason and common sense, and not the mere possibility of innocence." *Manual of Model Criminal Jury Instructions for the District Courts of the Eighth Circuit,* Jury Instruction 3.11 (1992). This Court has "repeatedly approved" Model Jury Instruction 3.11. *United States v. Mabry,* 3 F.3d 244, 249 (8th Cir.1993), *cert. denied* ——— U.S. ———, 114 S.Ct. 1403, 128 L.Ed.2d 75 (1994); *see also, United States v. Harris,* 974 F.2d 84, 85 (8th Cir.1992) (specifically rejecting a challenge to that portion of the instruction regarding "the mere possibility of innocence"). Therefore, we find that the instruction was proper.

3. Simms also argues that he was denied effective assistance of counsel when his trial counsel failed to object to Detective Lachenicht's testimony about a statement made by Ricketts. Detective Lachenicht testified that after Ricketts accepted the package, he told Calhoun to "Go get Roosevelt. Tell him his package is here." Simms argues that this statement was inadmissible under *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), and that he was prejudiced by his attorney's failure to object because this statement was the only evidence suggesting that Ricketts was aware of the package's contents.

Normally, claims of ineffective assistance of counsel are not properly raised on direct appeal. Instead, they are raised in post-conviction collateral proceedings where a proper record can be developed through evidentiary hearings. *United States v. Echols,* 2 F.3d 849, 850 (8th Cir.1993) (per curiam); *United States v. Petty,* 1 F.3d 695, 695–96 (8th Cir.1993); *United States v. Thomas,* 992 F.2d 201, 204–05 (8th Cir.1993). An exception to this general rule exists where the record is adequately developed by the trial court in post-trial proceedings. *See Thomas,* 992 F.2d at 204; *United States v. Williams,* 897 F.2d 1430, 1434 (8th Cir.1990).

In this case, there is nothing in the record explaining why Simms's attorney chose not to object to the statement. Nonetheless, Simms's claim of ineffective assistance of counsel is based upon an erroneous interpretation of *Bruton,* and, therefore, it

can be dealt with summarily in the context of this appeal. In *Bruton*, the Supreme Court held that a defendant's Sixth Amendment right to confront witnesses is violated by the admission of a codefendant's post-arrest statement implicating the defendant. 391 U.S. at 132–37, 88 S.Ct. at 1625–29. *Bruton* does not apply to statements made prior to arrest and in furtherance of the conspiracy, *United States v. Nelson,* 988 F.2d 798, 806–07 (8th Cir.), *cert. denied,* — U.S. —, 114 S.Ct. 302, 126 L.Ed.2d 250 (1993), or when the declarant codefendant testifies at trial, *United States v. Coco,* 926 F.2d 759, 761 (8th Cir.1991). The statement at issue in this case was made during and in furtherance of the conspiracy and was admissible under Fed.R.Evid. 801(d)(2)(E). Ricketts, the declarant codefendant, testified at trial. Therefore, *Bruton* is inapplicable, and Simms's claim of ineffective assistance of counsel fails.

## B. Edwin Ricketts

Ricketts argues that there was insufficient evidence to convict him of possession of cocaine base and that the district court erred by not granting his motion for judgment of acquittal. Again, "we must affirm the conviction if, after viewing the evidence in the light most favorable to the government and giving the government the benefit of all reasonable inferences, we conclude that a reasonable jury could have found [Ricketts] guilty beyond a reasonable doubt." *Mejia,* 8 F.3d at 5.

■ To meet its burden of proof for a violation of 21 U.S.C. § 841(a)(1), the government must prove beyond a reasonable doubt that the Ricketts "knowingly possessed cocaine with intent to distribute it." *United States v. Bennett,* 956 F.2d 1476, 1482 (8th Cir.1992). Ricketts argues that the package was not in his actual or constructive possession because there was no evidence suggesting that he knowingly possessed cocaine base. In support of this argument, Ricketts relies heavily on *United States v. Pace,* 922 F.2d 451 (8th Cir.1990). We find *Pace* factually distinguishable from this case and conclude that there was sufficient evidence to support the jury's verdict.

In *Pace,* the defendant was arrested while driving a car with almost two hundred pounds of cocaine hidden in his passenger and codefendant's baggage. 922 F.2d at 452. The defendant testified that he had been hired by his codefendant to drive the car from Los Angeles to Chicago for $250 and that he did not know he was carrying cocaine. This testimony was corroborated by the codefendant, who testified that he did not tell the defendant that they were transporting cocaine. This Court found the evidence insufficient to support a finding of knowing possession and reversed the defendant's conviction. *Id.* at 453.

■ In contrast, the evidence in this case was more than sufficient to support the jury's finding that Ricketts knew the package contained cocaine base. Detective Lachenicht testified at trial that Ricketts came to the door and said, "I'll take that," when the package was delivered, signed the name "Wortham" on the UPS delivery sheet, and accepted the package. The fact that Ricketts signed a false name supports the inference that he wanted to conceal his true identity, which, in turn, supports the inference that his involvement in the transaction was knowing and intentional. *See United States v. Wint,* 974 F.2d 961, 967 (8th Cir.1992), *cert. denied,* — U.S. —, 113 S.Ct. 1001, 122 L.Ed.2d 151 (1993). Furthermore, Ricketts's immediate response of "I'll take that" to Detective Lachenicht's announcement of a delivery for Jesse Brook suggests that he was expecting the package and adds additional support for the inference of his knowing involvement. *Cf. United States v. Fortenberry,* 973 F.2d 661, 662–63 (8th Cir.1992) (defendant told undercover postal inspector, "That's for me" without knowing to whom the package was addressed).

■ Detective Lachenicht also testified that, after Ricketts accepted the package, he (Ricketts) told Calhoun to go across the street and tell Simms that his package had arrived. Ricketts's participation in this circuitous delivery suggests that he understood the illegal nature of the transaction and adds further support for the inference of his knowing involvement. Although Ricketts denied making the statement, "issues of credibility

are properly resolved by the jury." *United States v. Moore,* 911 F.2d 140, 145 (8th Cir. 1990).

 Detective Lachenicht further testified that after Ricketts was arrested, he waived his Miranda rights and told the police that an individual in a bar gave him $100 and told him he could get more if he would cooperate. A women he knew to be a crack addict then offered him $200 to wait for a package, and, when the package did not arrive on the expected day, he was given a piece of crack cocaine to wait a second time. The jury may well have concluded that these payments of cash and crack cocaine were unlikely unless the package contained something illegal. *See United States v. Erickson,* 986 F.2d 211, 213 (8th Cir.1993). Although Ricketts also denied making this post-arrest statement, the jury was entitled to disbelieve him. *Moore,* 911 F.2d at 145.

Finally, during his testimony, Ricketts admitted to three previous drug convictions. This evidence also supports the jury's finding that Ricketts acted knowingly and intentionally. *Wint,* 974 F.2d at 967. In light of this record, "we cannot say that no rational trier of fact could have interpreted the government's evidence as showing that [Ricketts] knew that he was assisting in the distribution of cocaine." *Erickson,* 986 F.2d at 214.

### C. The Constitutionality of the Sentencing Guidelines

Simms and Ricketts both raise due process and equal protection challenges to the 100:1 disparity in the sentencing guidelines between sentences relating to cocaine base and powder cocaine. Both of these arguments have repeatedly been rejected by this Court. *See, e.g., United States v. Parris,* 17 F.3d 227, 230 (8th Cir.1994); *United States v. Echols,* 2 F.3d 849, 850 (8th Cir. 1993) (per curiam); *United States v. Womack,* 985 F.2d 395, 400–01 (8th Cir.), *cert. denied,* — U.S. ——, 114 S.Ct. 276, 126 L.Ed.2d 227 (1993); *United States v. Williams,* 982 F.2d 1209, 1213 (8th Cir.1992).

### III. CONCLUSION

Having considered the arguments raised by the appellants and finding no error, we affirm the judgments of conviction and sentences of the district court.