Merrill v. Town of Seabrook          CV-95-173-M    09/19/96

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


Christopher Merrill,
      Plaintiff,

      v.                                      Civil No. 95-173-M

Town of Seabrook,
Seabrook Police Department,
Sergeant Robert Granlund,
and Officer David Currier,
      Defendants.


## O R D E R


      Christopher Merrill brings an action against the Town of

Seabrook, the Seabrook Police Department, and Sergeant Robert

Granlund alleging violations of his Fourth and Fourteenth

Amendment rights under 42 U.S.C.A. § 1983 and related state tort

claims, as well as a defamation claim against Officer David

Currier.  Merrill's claims arise from an incident at Merrill's

home involving Seabrook police following a dispute between

Merrill and a tenant in his boarding house.  The defendants move

for summary judgment.


## STANDARD OF REVIEW

      Summary judgment is appropriate if the "pleadings,

depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party first must show the absence of a genuine issue of material fact for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).  If that burden is met, the opposing party can avoid summary judgment on issues that it must prove at trial only by providing properly supported evidence of disputed material facts that would require trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  A fact is "material" if it might affect the outcome of the litigation, and an issue is "genuine" if the record would allow a reasonable jury to return a verdict in favor of the nonmoving party.  Anderson, 477 U.S. at 248; see also National Amusements, Inc. v. Dedham, 43 F.3d 731, 735 (1st Cir.), cert. denied, 115 S.Ct. 2247 (1995).  The record must be interpreted in the light most favorable to the nonmoving party, the plaintiff in this case, and all inferences resolved in his favor.  McIntosh v. Antonio, 71 F.3d 29, 33 (1st Cir. 1995).

## BACKGROUND

Christopher Merrill rented rooms in his home to several tenants.  On Saturday, February 27, 1993, an argument among three

2

of Merrill's tenants required his intervention.  As a result,
Merrill told one, George Pinkham, that he would have to leave the
next day, the last day of Pinkham's paid week.  Pinkham objected,
and later the same day, at about 8:00 p.m., Pinkham spoke to
Sergeant Robert P. Granlund at the Seabrook police station.  He
requested police assistance to prevent Merrill from evicting him.
Granlund told Pinkham that his dispute with Merrill would have to
be settled by the Hampton District Court, not by the police.
Soon after, Merrill called the police station, and after first
asking the dispatcher to send the police, he spoke to Granlund,
asking him for police assistance to evict Pinkham.[1]  Again,
Granlund refused to intervene.  Merrill insisted that he had a
right to police assistance to evict a troublesome tenant just as
motels rely on the police to remove unruly guests.  Merrill said
that he had received police assistance in the past to remove
tenants.  When Granlund continued to refuse police assistance,
Merrill explained that Pinkham threatened another tenant with a
knife and asked Granlund to come to the house to talk with the

---

[1]  In his objection to summary judgment, Merrill states that
he disputes the defendants' version of his telephone conversation
with Granlund but does not explain what material differences
exist.  The summary of the telephone conversation recited here is
taken from Merrill's affidavit and deposition testimony, which is
not materially different from the defendants' version.

3

other tenants about the situation.  Granlund told Merrill he would have to contact a justice of the peace before the police could help. Merrill responded that he would take care of it himself on Sunday and hung up.

At 9:15 p.m. the same night, Pinkham returned to the police station to complain that Merrill had turned off power to the electric heater in his room.  Granlund consulted the Hampton District Court clerk about the situation, and the clerk told him that it appeared to be a landlord-tenant dispute, a civil matter, not a criminal incident.  Nevertheless, Granlund decided to go to Merrill's house and notified other Seabrook officers who were already in the area.  The police arrived at Merrill's house at about 10:30 p.m..

Merrill states that he and his wife got ready for bed at about 10:20 p.m. and turned out the lights.  Just as he got into bed, his dog started to bark, and he saw three police cruisers[2] in his yard.  He dressed hurriedly and went to the kitchen where the police were shining flashlights into the house and Granlund

---

[2]  Merrill remembers three cruisers and three police officers, whom he identifies as Deshaies, Chase, and Cody, in addition to Granlund, and points to the police log that shows that Cody was dispatched to his house on that night.  The police have testified that Cody was not present until after Merrill was arrested.

4

was knocking on the door with other officers standing behind him. Merrill did not turn on any lights. Granlund turned his flashlight toward Merrill, shining the light in his face. Granlund repeatedly asked Merrill to come outside to talk with him and asked to see either his boarders' license, as Merrill remembers, or his boarders' register, as Granlund remembers. Merrill yelled at Granlund to stop shining the light in his face and responded that he did not have a boarders' license or register. He ordered the police to leave his property. When Granlund did not leave, Merrill asked him to get the chief of police, which Granlund refused to do, and again demanded that the police leave. Merrill remembers that he was angry and scared by the situation, and the other officers testified that he was upset and screaming. Finally, Merrill opened the inner door toward himself and then opened the outside screen door that swung out and struck Granlund who was standing on the steps directly in front of the door. Granlund fell backward, off the steps. Merrill remained inside his house.

Granlund immediately told Merrill that he was under arrest. In response, Merrill closed and locked the inside door. Granlund ordered Merrill to come out and then broke a pane of glass in the door and sprayed Merrill with pepper gas as Merrill tried to keep

5

him from opening the door.  Meanwhile, Merrill's wife had come into the kitchen and turned on the lights.  Merrill went to the kitchen sink to wash the pepper gas out of his eyes and face.  The police kicked in the door and broke into the kitchen.  Merrill and his wife backed away retreating into their bedroom.  Merrill then ran through the group of police and out of the house.  The police also left the house, in part to avoid the pepper gas that had been sprayed into the house.  Merrill was taken into custody without resistance in his yard.  Merrill was then taken to the police station where he was treated for the effects of the pepper gas.  He was charged with assaulting a police officer and resisting arrest.

During the incident, the police did not ask about Pinkham, and did not try to find him, or check his room.  Even after Merrill was subdued and arrested, none of the three officers inquired about Pinkham or attempted to investigate his condition.  Pinkham later told Granlund that he had been in his room during the police encounter with Merrill that night and that he moved out of the room within the next day or two.

When Granlund returned to duty on March 3, he obtained a warrant to arrest Merrill on an additional charge — violation of New Hampshire's statute requiring hotel keepers to maintain guest

6

registers and to allow inspection by police.  See N.H. Rev. Stat. Ann. § 353:3 (1995).  Merrill responded to the warrant by voluntarily surrendering himself at the police station.  Another Seabrook police officer, David Currier, provided information to a newspaper reporter about Merrill's case that led to newspaper articles which Merrill claims were false and defamatory. Merrill was tried and convicted in Hampton District Court of assaulting a police officer and resisting arrest, but he was found not guilty on the charge of failing to keep and allow inspection of a guest register.  Merrill appealed his convictions but later assented to the state's motion to remand the matter to district court for consideration of Merrill's motion for annulment.

## DISCUSSION

Merrill brings § 1983 claims against Sergeant Granlund, the Town of Seabrook, and the Seabrook Police Department alleging that his warrantless arrest for assault and resisting arrest on February, 27, 1993, was unconstitutional and that the police used excessive force in effecting his arrest.[3]  Merrill also

_____

[3] Although Merrill pleads his claim under both the Fourth and Fourteenth Amendments, the Supreme Court has clarified that

7

challenges the constitutionality of his March 3 arrest, for failure to maintain a guest register, on grounds that the police lacked probable cause to support the warrant. He further alleges that the Seabrook police and Granlund violated his "statutory and constitutional rights" by filing a criminal complaint and prosecuting him for failing to maintain a guest register.[4] In

---

claims based on allegations of an unconstitutional arrest and use of excessive force are properly brought under the Fourth Amendment only. See Albright v. Oliver, 114 S. Ct. 807, 813 (1994); Graham v. O'Connor, 490 U.S. 386 (1989); see also Welsh v. Wisconsin, 466 U.S. 740, 748-49 (1984) (nonconsensual warrantless arrest in suspect's home absent exigent circumstances violates Fourth Amendment). Merrill also mentions the New Hampshire Constitution in his claim without any description of what right he claims to have been violated, or describing the cause of action he seeks to assert. State constitutional rights are of course not actionable under § 1983.

[4] Merrill titles the fifth count in his complaint "malicious prosection," and alleges a violation of his "clearly established statutory and constitutional rights" without stating whether he intends a state or federal cause of action and without specifying the statutory or constitutional source of the rights he seeks to assert. Because § 1983 creates no substantive rights, but only provides a means for redressing violations of federal rights, a claim brought under § 1983 must allege a specific federal constitutional or statutory violation as the basis of the claim. Albright, 114 S. Ct. at 811. In addition, a federal constitutional claim based on factual allegations of "malicious prosecution" requires a complex legal analysis. See id. at 813 (no Fourteenth Amendment substantive due process claim for prosecution without due process); Reid v. New Hampshire, 56 F.3d 332, 341 (1st Cir. 1995) (no Fourteenth Amendment procedural due process claim based on malicious prosecution when state law remedy exists); see also Calero-Colon v. Betancourt-Lebron, 68 F.3d 1, 3-4 (1st Cir. 1995). Although New Hampshire provides a

8

addition, he alleges that the police actions were driven by a town or police department policy and were caused by inadequate training and supervision. He also brings tort claims against Granlund and the Seabrook police for assault and battery during the February 27 arrest and against Officer David Currier for defamation. Merrill also alleges that Seabrook and the police department are vicariously liable for assault and battery by the police.

In the defendants' motion for summary judgment, Granlund asserts qualified and absolute immunity against Merrill's federal claims. He also defends his use of pepper gas spray as being necessary to arrest Merrill and therefore not battery. The municipal defendants, the town and police department, contend that Merrill cannot show that he suffered a violation of his constitutional rights and, therefore, his municipal claims fail. Currier seeks summary judgment on the grounds that he is entitled to a qualified privilege from defamation liability for the

_____

common law cause of action for malicious prosecution, see, e.g., Aranson v. Schroeder, 671 A.2d 1023, 1027 (N.H. 1995), Merrill does not seem to invoke state law. Because the defendants seek summary judgment on the grounds of absolute immunity rather than on the merits, it is unnecessary to further explore the legal contours of Merrill's possible claims especially since he himself is unclear as to just what his claims are.

9

information he provided to a newspaper reporter about Merrill.

The issues raised by the defendants are resolved as follows.

## A. Absolute Immunity

The Seabrook police and Sergeant Granlund assert that they are absolutely immune from liability for Merrill's claims that they charged and prosecuted him without probable cause for failure to maintain a guest register.[5] A state prosecutor enjoys absolute immunity for acts related to the initiation and conduct of a criminal prosecution. Imbler v. Pachtman, 424 U.S. 409, 431 (1976). The Supreme Court employs a functional approach when evaluating claims of absolute prosecutorial immunity. See Butz v. Economou, 438 U.S. 478, 515 (1978). Therefore, police officers are entitled to prosecutorial immunity to the extent that they perform prosecutorial functions as "advocate[s] for the state." Guzman-Rivera v. Rivera-Cruz, 55 F.3d 26, 29 (1st Cir. 1995) (quoting Burns v. Reed, 500 U.S. 478, 491 (1991)); see also Malachowski v. City of Keene, 787 F.2d 704, 712 (1st Cir.) (police officer entitled to absolute immunity with respect to

---

[5] Persons providing public lodging accommodations are required to maintain a registration system for all guests and for inspection by law enforcement officers. N.H. Rev. Stat. Ann. § 353:3.

claims based on the officer's instigation of juvenile delinquency proceedings), cert. denied, 479 U.S. 828 (1986). "The decision whether or not to charge is at the core of the prosecutorial function[]," Harrington v. Almy, 977 F.2d 37, 40 (1st Cir. 1992), and the decision not to dismiss a criminal case "lies at the heart of the prosecutorial function," Guzman-Rivera, 55 F.3d at 31. In addition, New Hampshire law provides absolute immunity from state law claims based on a defendant's actions that are "functionally related to the initiation of criminal process or to the prosecution of criminal charges." Belcher v. Paine, 136 N.H. 137, 146 (1992).

Merrill's claim in Count Five alleges that the police and Granlund, specifically, initiated and prosecuted the guest register criminal complaint without probable cause. Merrill does not dispute that the defendants were performing a prosecutorial function when charging him and prosecuting the case against him. Accordingly, the defendants are entitled to absolute immunity from Merrill's claims whether he intended to rely on state or federal law. Defendants' motion for summary judgment is granted as to Count Five of the complaint.

11

**B.  Qualified Immunity**

Granlund asserts qualified immunity from liability as to Merrill's claims that his arrests on February 27, for assault and resisting arrest, and on March 3 for failing to maintain a guest register, were unconstitutional.

Public officials performing discretionary functions are entitled to qualified immunity from suit for violations of federal law "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  The qualified immunity analysis in this circuit has two components: (1) "whether the constitutional right asserted by the plaintiff was 'clearly established' at the time of the alleged violation," and (2) "whether 'a reasonable official situated in the same circumstances should have understood that the challenged conduct violated that established right.'"  St. Hilaire v. City of Laconia, 71 F.3d 20, 24 (1st Cir. 1995) (quoting Burns v. Loranger, 907 F.2d 233, 236 (1st Cir. 1990)), cert. denied, 116 S. Ct. 2548 (1996).  To be clearly established, the right asserted must be articulated at an appropriate level of particularity so that "'[t]he contours of

12

the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right,'" although the same action need not previously have been ruled unconstitutional. St. Hilaire, 71 F.3d at 24-25 (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). "The ultimate question of whether a defendant is entitled, on a given set of facts, to the protection of qualified immunity is a question of law for the court to decide." Wood v. Clemons, 89 F.3d 922, 927 (1st Cir. 1996), accord Elder v. Holloway, 114 S. Ct. 1019, 1023 (1994).

**1.  February 27 arrest.**

Granlund contends that he is entitled to qualified immunity protection against Merrill's claim that he entered Merrill's home without a warrant or his consent and used excessive force to arrest Merrill in violation of his Fourth Amendment rights.  In support of his defense, Granlund asserts that an officer in his position could reasonably have believed that probable cause existed to arrest Merrill for assault after Merrill hit him with the door, which act constituted a misdemeanor committed in

13

Granlund's presence.  <u>See</u> N.H. Rev. Stat. Ann. § 631:2-a (1986);[6]

§ 594:10, I(a) (1986).[7]  Granlund further argues that Merrill

cannot reasonably contest that probable cause existed to believe

that Granlund had been assaulted because Merrill was later

convicted of simple assault beyond a reasonable doubt based on

the same facts.[8]  Granlund concludes that a reasonable officer in

his situation could reasonably have understood New Hampshire law

---

[6]  I.  A person is guilty of simple assault if he:
    (a) Purposely or knowingly causes bodily injury to
    another; or
    (b) Recklessly causes bodily injury to another; or
    (c) Negligently causes bodily injury to another by
    means of a deadly weapon.
  II.  Simple assault is a misdemeanor unless committed in a
    fight entered into by mutual consent, in which case it
    is a violation.

[7]  Arrest by a police officer without a warrant is lawful when the officer has probable cause to believe the suspect has committed a misdemeanor in his presence.

[8]  Merrill argues that his conviction for simple assault can not be used to establish probable cause because, while his appeal was pending, the New Hampshire Supreme Court remanded the case to the district court to consider an assented to motion to annul the conviction under New Hampshire Revised Statutes Annotated § 651:5 (1986).  As Merrill has not established that the district court has now annulled his conviction, he is not entitled to the protection offered by § 651:5.  <u>See</u> <u>Brown v. Brown</u>, 133 N.H. 442, 445 (1990) (discussing effect of annulment under § 651:5).  But, in any event, a state's annulment of a conviction will not operate to retroactively negate probable cause if in fact it existed.

14

to authorize him to enter Merrill's house to arrest him because he had probable cause to support the arrest.

But Granlund seems to miss the point; he may well have had probable cause to arrest Merrill, but did he have the right to enter Merrill's home to arrest him without a warrant?  At the time of the incident in February 1993, the law was clearly established that a warrantless and nonconsensual entry into a suspect's home to arrest him for a misdemeanor absent both probable cause and exigent circumstances was unreasonable, and thus violative of the Fourth Amendment.  Hegarty, 53 F.3d at 1373 (citing Welsh v. Wisconsin, 466 U.S. 740, 749 (1984) and Payton v. New York, 445 U.S. 573, 586 (1980)).  "Probable cause, without more, cannot legitimate a warrantless entry into a suspect's home."  Buenrostro v. Collazo, 973 F.2d 39, 43 (1st Cir. 1992).  New Hampshire Revised Statutes Annotated § 594:10, I(a), authorizing warrantless arrests for misdemeanors committed in an officer's presence, does not provide an objectively reasonable legal basis to contravene clearly established law that a warrantless and nonconsensual entry into a suspect's home to arrest him, without exigent circumstances, is unconstitutional.[9]

---

[9]  In Malachowski v. City of Keene, 787 F.2d 704, 713 (1st Cir. 1986) the court determined that police officers were

15

Although Granlund may be able to demonstrate objectively reasonable grounds to support probable cause to arrest Merrill, to invoke qualified immunity he must also establish that exigent circumstances existed to justify his entering the house. Exigent circumstances exist when "there is such a compelling necessity for immediate action as will not brook the delay of obtaining a warrant." United States v. Wihbey, 75 F.3d 761, 766 (1st Cir. 1996) (quotations omitted). Whether an exigency is sufficient to overcome the presumption against a warrantless and nonconsensual arrest in a suspect's home is a fact-specific inquiry. United States v. Tibolt, 72 F.3d 965, 969 (1st Cir. 1995). Exigent circumstances that can provide an exception to the warrant

---

entitled to qualified immunity based on § 594:10, I(a) from parents' claims that the police violated the parents' constitutional rights by arresting their daughter in their home without a warrant and without their consent. Id. at 713-14. But the court drew a clear distinction between the parents' claim and a claim by the arrestee:

> Appellants, again, did not bring the instant action on Amy's behalf or for her benefit; they seek vindication for alleged deprivations of their own constitutional rights. We do not have before us, therefore, any claim that the manner of Amy's arrest violated Amy's rights under the Fourth Amendment--a matter appellants could not raise--but rather a claim that LaCoste's warrantless, nonconsensual entry into appellants' residence in order to effect the arrest violated appellants' Fourth Amendment rights.

Id. at 713.

requirement include: "(1) 'hot pursuit' of a fleeing felon; (2) threatened destruction of evidence inside a residence before a warrant can be obtained; (3) a risk that the suspect may escape from the residence undetected; or (4) a threat, posed by a suspect, to the lives or safety of the public, the police officers, or to [the suspect] herself."  Hegarty, 53 F.3d at 1374; accord McCabe v. Life-Line Ambulance Serv., 77 F.3d 540, 544-45 (1st Cir.), petition for cert. filed, 64 USLW 3808 (May 29, 1996); Tibolt, 72 F.3d at 969.

Granlund, however, makes no effort to argue the existence of, and offers no evidence to support a finding of exigent circumstances justifying his decision to break the window in Merrill's door, to spray Merrill with pepper gas, and then to break down the door to enter the house to arrest Merrill for a misdemeanor.  Based on the record presented by the defendants, therefore, the court necessarily concludes at this juncture that exigent circumstances were not present.  A reasonable officer in Granlund's position should have understood that, absent exigent circumstances, breaking into Merrill's house without his consent and without a warrant would violate his Fourth Amendment rights. As Granlund's entry into the house was objectively unreasonable, based on the record, qualified immunity also cannot protect

17

Granlund from Merrill's claim that excessive force was used in making the arrest. Cf. Graham v. Connor, 490 U.S. 386, 396 (1989) ("the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it"). Accordingly, summary judgment is denied as to Merrill's claim that the manner used by Granlund to arrest him on February 27, 1993, violated his constitutional rights.

Similarly, Granlund's defense that the pepper gas spray did not constitute common law battery, because it constituted reasonable force necessary to effect Merrill's arrest, must fail on the current record.

## 2. March 3 arrest.

Merrill alleges that Granlund lacked probable cause to support his application for the warrant he obtained on March 3 to arrest Merrill for failure to maintain a guest register in violation of New Hampshire Revised Statutes Annotated § 353:3. Granlund asserts that he is entitled to qualified immunity because a reasonable officer in his position could have believed probable cause to arrest existed.

18

Granlund is entitled to qualified immunity for Merrill's March 3 arrest unless a reasonably well-trained officer under the same circumstances should have known that his warrant application lacked probable cause and that he should not have applied for the warrant. Malley v. Briggs, 475 U.S. 335, 345 (1986). Officers are entitled to qualified immunity in seeking arrest warrants on less than probable cause "so long as the presence of probable is at least arguable." Rivera v. Murphy, 979 F.2d 259, 263 (1st Cir. 1992) (quotation omitted). "Probable cause exists if 'the facts and circumstances within [a police officer's] knowledge and of which [the officer] had reasonably trustworthy information [are] sufficient in themselves to warrant a [person] of reasonable caution' to believe that a crime has been committed or is being committed." Alexis v. McDonald's Restaurants of Mass., Inc., 67 F.3d 341, 351 (1st Cir. 1995) (quoting Carroll v. United States, 267 U.S. 132, 162 (1925)). A probable cause determination is based on a reasonable probability that the suspect committed a crime and does not require sufficient evidence to convict. Rivera, 979 F.2d at 263.

Whether probable cause to arrest exists depends upon the elements of the offense to be charged. New Hampshire's guest register statute provides as follows:

19

> All hotel keepers and all persons keeping public
> lodging houses, tourist camps, or cabins shall keep a
> book or card system and cause each guest to sign
> therein his own legal name or name by which he is
> commonly known.  Said book or card system shall at all
> times be open to the inspection of the sheriff or his
> deputies and to any police officer.  The term "public
> lodging house" as here used shall mean a lodging house
> where more than 2 rooms are habitually let for less
> than a week at a time for the accommodation of
> transients.  Whoever violates any provision of this
> section shall be guilty of a misdemeanor.

N.H. Rev. Stat. Ann. § 353:3.  Granlund stated in the warrant application:

> On February 27, 1993 at approximately 10:30 PM, I went
> to the establishment of MERRILL'S at 60 Follymill Rd.
> Merrill sub lets multiple units at 60 Follymill Rd. I
> requested him to open his register as a hotel for my
> inspection.  He refused.

In response, a justice of the peace issued an arrest warrant for Merrill, and Merrill surrendered to arrest.

Based on the record, on March 3, 1993, when Granlund applied for the arrest warrant, he knew that Merrill rented rooms to more than two persons and that he did not keep a guest register. However, Granlund had no information as to whether Merrill habitually let rooms for less than a week[10] and, therefore, had no reason to think Merrill's boarding house qualified as a

---

[10]  Although Merrill asserts in his objection to summary judgment that Granlund knew Pinkham rented week to week, he fails to support his statement with a reference to the record.

20

"public lodging house" within the meaning of § 353:3. That question was the crux of the dispute between Granlund and Merrill on February 27 when Merrill requested police intervention and Granlund refused on the grounds that Merrill was not a hotel keeper entitled to police assistance in ejecting guests. See N.H. Rev. Stat. Ann. §353:3-c (1995). Granlund's inquiry to the clerk of the Hampton District Court confirmed his opinion that Merrill was likely a landlord and not a hotel keeper. According to the record presented here, Granlund acquired no additional information in the meantime to change his initial opinion. As a result, a reasonably competent officer in Granlund's position could not have reasonably believed that Merrill was a hotel keeper operating in violation of § 353:3. Thus, the existence of probable cause to arrest on that charge would not have been even arguable. Because Granlund lacked an objectively reasonable basis to believe that Merrill had violated the guest register statute, he is not entitled to qualified immunity, on this record.

C. **Municipal Liability**

Merrill brings claims against the Town of Seabrook and the police department alleging that Granlund's actions were caused by the town or police department policy or custom and by inadequate supervision and training.[11]  In moving for summary judgment, the defendants do not contest Merrill's allegations of municipal policy and inadequate training.  Instead, the defendants challenge Merrill's municipal claims only on grounds that if Granlund is entitled to qualified immunity from Merrill's claims, the required causal connection between a municipal policy or practice and violation of Merrill's constitutional rights is missing.  Even if Granlund were entitled to qualified immunity, however, Merrill's claims of municipal liability would not necessarily fail.

Municipalities are not entitled to the protection of either absolute or qualified immunity from suit under § 1983. Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 166 (1993).  Because the

_____

[11] The claim against Granlund in his official capacity, in effect, is a suit against Seabrook.  See, e.g., Kentucky v. Graham, 473 U.S. 159, 165 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting Monell v. New York City Dep't of Social Servs., 436 U.S. 658, 690 n.55 (1978)).

22

qualified immunity analysis does not necessarily determine whether a constitutional violation occurred, "a municipality might in rare cases be liable for a constitutional violation, even though the individual who acted for it was protected by qualified immunity."  Walker v. Waltham Housing Authority, 44 F.3d 1042, 1047 (1st Cir. 1995); see also, e.g., Fagan v. City of Vineland, 22 F.3d 1283, 1291 (3d Cir. 1994) (discussing independent municipal liability); Garner v. Memphis Police Dep't, 8 F.3d 358, 365 (6th Cir. 1993) ("a municipality may not escape liability for a § 1983 violation merely because the officer who committed the violation is entitled to qualified immunity"), cert. denied, 510 U.S. 1177 (1994).

Summary judgment is therefore denied on Merrill's claims of municipal liability, given the only grounds advanced by the town.

D.  **Defamation**

Officer Currier asserts that his statements to newspaper reporters about the February 27 incident,[12] which Merrill alleges

_____

[12]  In particular, Merrill challenges statements, attributed to Currier, in three newspaper articles to the effect that a tenant of Merrill's "told officials Merrill had turned off the heat to his residence and had locked him out," "Saturday's tenant/landlord incident was perhaps one of the most violent in recent history," and "I've never heard of anyone locking someone

23

were false and defamatory, are protected by privilege. New Hampshire recognizes a conditional privilege to make statements "'if the facts, although untrue, were published on a lawful occasion, in good faith, for a justifiable purpose, and with a belief, founded on reasonable grounds, of its truth,' provided that the statements are not made with actual malice." Simpkins v. Snow, 139 N.H. 735, 740 (1995) (quoting Chagnon v. Union-Leader Co., 103 N.H. 426, 437 (1961), cert. denied, 369 U.S. 830 (1962)).

In response, Merrill raises a factual issue concerning whether reasonable grounds existed for Currier to believe that his statements were true. It is undisputed that Currier did not personally participate in the incident or the arrest, and that he was not working that night. The newspaper articles based on his statements were published on March 2 and 3.

Merrill points to conflicting evidence about the source of Currier's information. In his affidavit in support of his motion for summary judgment, Currier states: "I relied upon the official police report of the incident and/or information supplied to me by one or more of the police officers who were

else out before this."

personally involved in the incident and in Merrill's arrest." However, at Merrill's trial on October 26, 1993, two years before the date of his affidavit, Currier testified that he could not recall how he had gained the information about the incident that he related to the newspaper reporter or whether he had talked with the officers involved in the incident before making the statements referenced in the articles.

Further, according to the defendants, Granlund did not return to duty until March 3, the day after the first newspaper articles were published, and Granlund's report is dated March 4, two days after the first newspaper article was published. In addition, the officers who were present during the entire incident, Deshaies, Chase, and Granlund, all deny discussing the matter with Currier before he made statements to the newspapers. Because the source of Currier's information is material to a determination of whether reasonable grounds existed to believe that the information was true, Merrill has established a genuine dispute concerning material facts that precludes summary judgment on Merrill's defamation claim.

## CONCLUSION

For the foregoing reasons, the defendants' motion for summary judgment (document no. 6) is granted in part and denied in part as follows. Summary judgment is granted in favor of the defendants on all claims in Count Five, but is otherwise denied.


SO ORDERED.


_____
Steven J. McAuliffe
United States District Judge

September 19, 1996

cc:  Kenneth D. Murphy, Esq.
     R. Matthew Cairns, Esq.